# Giles *v.* Giles, Appellant.

*Divorce—Desertion—Excusable—Refusal of divorce.*

A decree of divorce on the ground of desertion will be reversed where it appears that the alleged desertion of the wife followed acts of adultery on the part of the libellant, which she did not condone and which justified her in leaving him.

Argued November 20, 1922. Appeal, No. 103, Oct. T., 1922, by respondent, from decree of C. P. Delaware County, March T., 1920, No. 805, granting a divorce in the case of George B. Giles v. Sarah Giles. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Libel in divorce on the ground of desertion. Before JOHNSON, P. J.

The case was referred to Henry W. Jones, Esq., as master, who recommended that a divorce be granted.

On exceptions to the master's report the court dismissed the exceptions as amended and revised and granted a divorce. Respondent appealed.

*Error assigned,* among others, was the decree of the court.

*Fred Taylor Pusey,* and with him *Thomas C. Egan,* for appellant.

*James L. Rankin,* of *Geary & Rankin,* for appellee.

OPINION BY GAWTHROP, J., March 2, 1923:

The ground for divorce, alleged in the libel, is that the respondent wilfully and maliciously and without a reasonable cause deserted libellant and absented herself from his habitation and continued in said desertion during the period of two years and upwards from the date of the desertion. The answer denies the desertion, admits withdrawal from the habitation and companionship of the husband, and avers, as justification therefor, that he was guilty of adultery and subjected her to cruel and barbarous treatment and inflicted such indignities upon her person as rendered her condition intolerable and life burdensome, and thereby compelled her withdrawal. A master was appointed who heard the testimony and filed a report, in which he recommended that a decree of divorce be made. The court below dismissed the exceptions filed to the master's report and confirmed his findings without any discussion of the evidence, of the conclusions of fact or of the application of the law to the facts as found. Of whatever drudgery the court below may relieve itself in a suit for divorce by appointing an examiner, neither it nor we can escape the burden of a careful consideration of the evidence in order to ascertain whether in truth it does establish the statutory grounds for a divorce. The rule generally applicable to proceedings before a master or an auditor, that a finding of fact will not be disturbed, except for manifest error, has not been adopted in proceedings in divorce. It is our duty, on appeal from a decree of divorce, except where there has been an issue and jury trial, to review the testimony and adjudge whether it sustains the complaint of the libellant: Middleton v. Middleton, 187 Pa. 612; Howe v. Howe, 16 Pa. Superior Ct. 193; Rishel v. Rishel, 24 Pa. Superior Ct. 303.

We have carefully examined all of the testimony, which occupies two hundred pages of the record, and are not able to agree with the master and the learned judge below in their conclusions. The parties were married in

the City of Philadelphia, February 22, 1893, and resided in that city until May 6, 1909. They have one child, a daughter, now twenty-seven years of age, who is married and not dependent on either of them. They have never resided together since the date of their separation. Since that time, the husband has made numerous efforts to induce his wife to return to him. These efforts were bona fide. The question is whether the wife's separation from her husband was justifiable. The evidence tending to prove cruel and barbarous treatment and indignities to the person of the respondent leaves us with a very unpleasant picture of libellant's manhood and decency, but we are constrained to agree with the master that it falls short of establishing facts justifying the respondent's withdrawal from her husband's house on that ground. The real issue is whether the libellant committed adultery and, if so, whether the respondent condoned it and thereby forfeited her right to withdraw from his habitation and separate from him for that cause. This issue was bitterly contested and the testimony cannot be reconciled. The respondent undertook to prove that adulterous relations existed between the libellant and one Barbara Fisher and other women. Mrs. Fisher testified that the libellant committed adultery with her. She described in detail the intimacy between them, which began in 1908 and continued until after the separation of the libellant and respondent. Her testimony bears the earmarks of truth and is consistent with the testimony of the respondent, with the libellant's letters written to his wife and with the undisputed facts. The respondent testified that the libellant confessed to her that he had had adulterous relations with Mrs. Fisher and other women. A part of her testimony follows: "Q. When did you commence to learn that he had been running with women? A. Around about five weeks before we separated, about March. It was in the latter part of March. He came home one night when I was in bed, it was between ten and eleven o'clock—maybe after

eleven. He came home and said, 'I have something to tell you and I will tell it to you in the morning.' I said, 'No, tell me now.' Many times when morning came I would not hear it. 'I have been going with a woman, but I broke it off with her tonight and from now on I am going to be all right.' I said, 'have you been intimate with this woman?' He said, 'Yes.' He mentioned Mrs. Fife and another woman, I cannot tell her married name, but her maiden name was Emily Elvert. He said he had stayed at the Hanover and had also been down on the 'Republic' and had a state room. He said he was not going to hide anything, but was going to tell me everything, and believe me, I got everything out of him I could. Q. How long was that before the separation? A. About five weeks. Q. Did you continue to occupy the same room with him? A. No. I roomed with my daughter, Mildred. I was going to be sure he was all right. He says I cohabited with him afterwards; he tells a lie; he tells one lie after another." She and her daughter testified also that about the third or fourth of May, the separation occurring on the sixth, she waited all night for her husband to come home; that early in the morning, about six o'clock, they went to the house of Mrs. Fisher to look for him; that Mrs. Fisher came out and said, "He is not here"; that they watched for him and that finally he came out the back way and saw them and ran down the alley and into a saloon; that the libellant went home and said to her mother, "Well, it is all over," and started to get ready to move the furniture out of the house; that a day or two later, when the husband came home, the last load of furniture had just been moved. Mary Hill, a sister of the libellant, who was called by him as a witness, testified that the respondent told her at the time she was tearing up the house that "she was going to leave George on account of this Fisher woman." The respondent offered letters written by the libellant to her, which, not only tend to corroborate her testimony and that of Mrs. Fisher, but are tanta-

mount to confessions of guilt. A letter dated April 10, 1910, contained this: "Sadie I have learned at a terrible price the wages of sin. I have drunk the dregs of its poisonous cup to my everlasting regret. I ask again your forgiveness for the unhappy life I have meted out to you." A letter dated December 10, 1909, read in part: "I know and have admitted to you that I have been indiscreet but not for a long time now." The libellant denied the charge of adultery. He said that his relations with Mrs. Fisher were purely of a business character; that, at the time of the occurrences in question, he was employed as a clerk in the City Hall at Philadelphia; that Mrs. Fisher proposed to him that she would make small loans of money at high rates of interest to employees of the city with whom his work brought him into contact, and that the interest received would be divided equally between them; that his relations with her were wholly in respect to this business. His testimony on this point is wholly unsupported. It is inconsistent with the circumstances and admitted facts, and is contradicted by Mrs. Fisher, who said that she lent the libellant money for his personal needs and that he still owed her money. He did not produce a person to whom any loan was made. He admitted that he visited drinking saloons with Mrs. Fisher; that he was drunk in her house on several occasions, and that when his wife saw him coming out of Mrs. Fisher's house at six o'clock in the morning, two or three days before the separation, he ran away from her. The testimony of the witness, McCausland, that the libellant expressed to him a desire to buy lace stockings for Mrs. Fisher sheds a side light on the character of the intimacy between them. The libellant admitted that he never spent a night with his wife or occupied the same room with her after the separation. He testified that a resumption of marital relations occurred a few months after the separation while his wife was staying with her relatives at

Merchantville, New Jersey. This the wife denied. The circumstances as testified to by him are most improbable.

The master did not find specifically that the libellant did or that he did not commit adultery, although he stated that as between the parties he was more impressed with the sincerity of the wife and that, in his opinion, a finding by a jury that the libellant was guilty of adultery would be sustained by the court. The testimony on this point cannot be reconciled and it is necessary to find where the truth lies. We are clear that the evidence establishes that the libellant committed adultery with Mrs. Fisher. We agree with the master in his finding that the libellant made a confession of wrongdoing to his wife substantially as testified by her. But we find nothing in the record, as did the master, to justify disregarding the confession on the ground that it was the utterance of a man under the influence of liquor. We find ample corroboration of it in the testimony of Mrs. Fisher, the libellant's letters and the undisputed facts. With the libellant's adultery proved against his positive denial, we consider that his testimony is wholly unworthy of belief and, unsupported as it is, that it fails to establish condonation of his offense by the wife. His letter of April 10, 1910, written to his wife after the alleged acts of condonation, while full of expressions of repentance and love, stated that "you have shown my love no mercy" ......"you might listen without steeling yourself against me as you have done so long." Manifestly this is the complaint of one whose promises have not been trusted and whose wrongdoing has not been condoned. It is strongly corroborative of the wife's denials of any acts of condonation. The respondent's sincerity and disposition to tell the truth impress us here as they did in her other testimony. We are of opinion that the adultery of the libellant was established and that the respondent was justified in leaving him for that cause, and would have been justified in applying for a divorce

on the ground of adultery. We are satisfied also that the offense was not condoned by the wife. The facts should have been so found. It follows that the learned court below erred in dismissing the exceptions and granting a decree.

· The assignments of error are sustained, the decree of divorce is reversed and the libel dismissed at the costs of the libellant.