Arnout's Estate. No. 1.

NOTE.—See next case.

---

## Arnout's Estate. No. 2.

*Decedents' estates—Husband and wife—Widow's claim for $5000—Intestate Act of June 7, 1917.*

Where a widow voluntarily, and with the assent of her husband, withdraws from the common domicile, and such withdrawal does not involve wilful and malicious desertion, she is entitled, under the Intestate Act of June 7, 1917, P. L. 429, to the surviving spouse's claim of $5000 out of her husband's estate.

Petition for allowance of $5000 under the intestate laws. O. C. Schuylkill Co.

*John F. Whalen* and *George Ellis*, for petitioner.

*William Faussett, M. M. Burke* and *P. H. Burke*, contra.

WILHELM, P. J., Feb. 11, 1924.—On April 3, 1923, upon the petition of Anna Arnout, widow of George Arnout, deceased, the court appointed two appraisers to appraise the property chosen by Anna Arnout, surviving wife of George Arnout, to the amount of $5000 under the Intestate Act of 1917, the said George Arnout having died intestate and without issue.

The appraisers appointed performed their duty and filed their appraisement on June 11, 1923, and exceptions have been filed to the appraisement to the effect that Anna Arnout has no right in law to have the property included in

the appraisement set apart to her, because she wilfully and maliciously deserted George Arnout, her husband, for one year and upwards prior to his decease, and that no family relation existed between George Arnout and Anna Arnout at the time of his decease.

George Arnout and Anna Arnout were married in the year 1884, and lived together as man and wife, in or near the Borough of St. Clair, until the year 1897, when a separation occurred, and since that time this husband and wife have not lived together by occupying the same residence. When the separation occurred, George Arnout and his wife were occupying a house owned by him in what is known as Arnout's Addition to St. Clair.

Anna Arnout testified that, just before her leaving this home, she discovered that George Arnout was suffering from a venereal disease, which was communicated to her, and this testimony has not been successfully contradicted, and stands as an established fact.

It seems to be undisputed that Anna Arnout made known her intention to leave George Arnout about a week or ten days before the separation took place, and that no protest or objection to the separation was uttered by George Arnout. The wife procured a team or teams for the purpose of moving her furniture from the George Arnout home, and during the progress of the removal of the furniture George Arnout came to the home and assisted in loading the furniture; and, in so far as this record shows, he uttered no protest or dissent to the separation.

After the moving van had left the house, Anna Arnout shed tears, whereupon her husband said to her: "You are regretting it already. The best thing you can do is to get the team and fetch those things home to-morrow."

Following the separation, Anna Arnout rented a house in St. Clair, engaged in the business of keeping boarders for her support and continued in that business for a number of years, later occupying a house which she had bought, and finally acting as housekeeper for her brother. In referring to the sale of her property and going to her brother's home as housekeeper, George Arnout said in his testimony: "I had no objection to her going anywhere she liked. It was none of my business where she went." And upon a serious break in her health, due, as she alleges, to the after-effects of the venereal disease communicated to her by George Arnout, she left St. Clair, went to Hatboro, and later to Doylestown, seeking medical assistance for her ailment, and continued to live at Doylestown until the time of the death of her husband.

Immediately after the separation, George Arnout, who was driving a butcher wagon, began supplying meat to his wife and continued to supply her with meat for eleven years, until he changed his occupation. None of the meat was paid for by Anna Arnout. Practically during all the time of the separation, while Anna Arnout continued to live in St. Clair, her husband visited her frequently and had sexual intercourse with her. At the time of the deaths of her father and mother, he attended the funeral of her parents, and on each occasion walked with her to the graveyard, as is the custom of husband and wife to comport themselves under these circumstances.

After the separation, George Arnout acquired considerable real estate, which he had occasion to sell from time to time, the deeds of conveyance in every instance being signed by Anna Arnout, his wife, and when Anna Arnout decided to sell her real estate, George Arnout joined in the execution of the deed at her request.

Upon the occasion of many visits of George Arnout to his wife, she inquired of him when he intended to come to live with her at her home. This inquiry was made not only when they were alone, but in the presence of others, and

Arnout's Estate.  No. 2.

in each instance his reply was non-committal, such as, "I will think about it," "Perhaps later on," and in none of these replies was there a refusal to take up his residence with her.  The replies naturally left the impression that he intended some time in the future, when it suited his convenience better, to reside with her in her home.

Two days before Anna Arnout left St. Clair to go to Doylestown, she communicated her intention to her husband, and he said to her, "How long will you be away?" and she replied, "A couple of weeks—five or six weeks I thought of staying."  While at Doylestown, Anna Arnout gradually got worse physically, and said that her ailment and physical condition was due to the infection she had received from her husband, which she first discovered when she was living with her husband, and which seemed to get better and worse from time to time.  And she was treated for this affliction at Doylestown.

In the early part of May, 1915, George Arnout instituted a proceeding for divorce against his wife, Anna Arnout.  The testimony taken in the suit for divorce has been admitted by consent of the parties in this proceeding.  It appears that this proceeding for a divorce was abandoned by George Arnout. At any rate, it was not prosecuted to final adjudication, and some of the facts referred to in this opinion appeared in that testimony.  And it should be noted that the proceeding for a divorce was instituted about a year before Anna Arnout left St. Clair, seeking medical assistance.

Section 2 (a) of the Intestate Act provides that where an intestate shall leave a spouse surviving and other kindred, but no issue, the surviving spouse shall be entitled to real or personal estate, or both, to the aggregate value of $5000, in addition, in the case of a widow, to the widow's exemption as allowed by law.  Section 6 of the same act provides: "No wife who shall have for one year or upwards, previous to the death of her husband, wilfully and maliciously deserted her husband shall have the right to claim any title or interest in his real or personal estate after his decease, under the provisions of this act."

This is the section of the Intestate Act which the exceptants claim prevents the widow from being entitled to the $5000 appraised and set apart to her by the appraisers.  And if Anna Arnout did wilfully and maliciously desert her husband for one year and upwards, her right to claim any title or interest in his estate is barred, unless she had reasonable and lawful cause.

In order to deprive a wife of her interest in her husband's estate under the intestate laws because of desertion, the character of the desertion must have been such that, under the law, it would have been sufficient to entitle the husband to a decree of divorce against his wife: Hahn v. Bealor, 132 Pa. 242; Hayes's Estate, 23 Pa. Superior Ct. 570.

In order to secure a decree of divorce on the ground of desertion, it must be shown that the desertion was wilful and malicious.  The desertion that will prevent a spouse from inheriting from a deceased husband's or wife's estate must be of the same character; that is, wilful and malicious.

Desertion consists of the wilful and malicious separation of one spouse from the other without the latter's consent, and without justification.  Desertion is an actual abandonment of matrimonial cohabitation with an intent to desert wilfully and maliciously: Middleton v. Middleton, 187 Pa. 612; Hull v. Hull, 14 Pa. Superior Ct. 520.  Separation is not necessarily desertion: Middleton v. Middleton, 187 Pa. 612; Chambers v. Chambers, 20 Pa. C. C. Reps. 41.  Merely leaving the house is not desertion, if wilfulness and malice be lacking: Pote v. Pote, 23 Pa. C. C. Reps. 327.  If the deserted spouse encouraged a separation actively or tacitly, it is a good defence to the charge of

desertion: Ralston's Appeal, 93 Pa. 133; Mendenhall v. Mendenhall, 12 Pa. Superior Ct. 290.

Before Anna Arnout can be denied her right to inherit from the estate of her husband, it must be affirmatively shown that she wilfully and maliciously deserted him. Under the facts as we have them in this case, when did the desertion of Anna Arnout take place? It did not occur at the time of her leaving his house, because the testimony shows that she left with such regret that she shed tears, and he appeared to be indifferent. That she left with his assent is established by his testimony, he helping to load her furniture, and not uttering a single word of dissent, protest or objection to her leaving. His assent to her remaining away from his home is manifested on numerous occasions by his visits to her, having sexual intercourse with her, contributing to her support down to the time she left St. Clair. And when Anna Arnout announced her intention to leave St. Clair and seek medical assistance, her husband did not dissent. And during the whole of this period of separation he never so much as invited her to return to his home, but, upon the other hand, left her under the impression that sometime he would be willing to come to her home and live with her.

Under these facts, it is impossible to conclude that Anna Arnout wilfully and maliciously deserted her husband. The separation here was caused by the husband's communicating a venereal disease to his wife, which was sufficient cause for her leaving him, and although the separation was long in duration, it was continued with his assent; no doubt, suiting his convenience in every way.

Under the Intestate Law of 1917, her right to inherit from the estate of her husband has been fixed, and Anna Arnout not having violated the provisions of section 6 of said act, the exceptions should be dismissed.

And now Feb. 11, 1924, the exceptions are dismissed.