## Edward N. Burns *v.* Marie M. Burns, Appellant.

*Divorce—Desertion—Evidence—Sufficiency.*

In an action of divorce on the ground of desertion, a decree should be refused where the evidence is insufficient to establish wilful and malicious desertion.

If a wife is willing to live with her husband in the marriage relation, and he is too poor to provide even one room where they may live together, her living separate and apart from him until he is able to give her a home does not amount to a wilful and malicious desertion. By a home, is meant conditions that do not require the sharing of a bedroom with some one else.

*Divorce — Practice — Findings of master — Authority —Act of April 20, 1911, P. L. 71.*

While a master may be appointed to take testimony in divorce proceedings, the court of common pleas must still be satisfied by its own knowledge of the testimony that the averments of the libel have been proved by full and complete evidence before a divorce can be granted.

On appeal from such a decree, it is also incumbent upon the Superior Court, except where there has been an issue and jury trial, to review the testimony and adjudge whether it sustained the complaint of the libellant.

The master's report, while it is entitled to the fullest consideration because of his personal contact with the witnesses, does not come to the court of common pleas, or the appellate court, with any preponderating weight or authority which must be overcome by the respondent.

Argued December 10, 1924. Appeal, No. 189, Oct. T., 1923, by respondent, from decree of C. P. No. 5, Phila. Co., June T., 1919, No. 496, granting a divorce in the case of Edward N. Burns v. Marie M. Burns. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Libel in divorce. Before MARTIN, P. J.

The facts are stated in the opinion of the Superior Court.

The case was referred to H. Rook Goshorn, as master, who recommended that a divorce be granted on the ground of desertion. On exceptions to the master's report the court dismissed the exceptions and granted a divorce. Respondent appealed.

*Error assigned* was the decree of the court.

*John Lamon,* for appellant.

*A. L. Lewis,* for appellee.

OPINION BY KELLER, J., February 27, 1925:

The Act of April 20, 1911, P. L. 71, amending the Divorce Act of March 13, 1815, P. L. 150, which first authorized the court of common pleas to appoint a master "to take the testimony and return the same to the court, together with a report of the proceedings had before him, and his opinion of the case," effected no change in the duty of that court, or of this court on appeal, as respects a consideration of all the evidence and the determination of the facts therefrom. The court of common pleas must still be satisfied by its own knowledge of the testimony that the averments of the libel have been proved by full and competent evidence before a divorce can be granted: Middleton v. Middleton, 187 Pa. 612, 615; Smith v. Smith, 72 Pa. Superior Ct. 96, 98. And, on appeal from the decree, it is still incumbent on this court, except where there has been an issue and jury trial, to review the testimony and adjudge whether it sustained the complaint of the libellant: Giles v. Giles, 80 Pa. Superior Ct. 469, 470. The act only authorizes the appointment of a "master" for a limited purpose and does not confer on him the same powers as a master in equity nor give his "report of the proceedings and opin-

ion of the case" the force and effect of the latter's findings of fact. The master's report, therefore, while it is entitled to the fullest consideration because of his personal contact with the witnesses, does not come to the court of common pleas, or this court, with any preponderating weight or authority which must be overcome by the respondent. The learned court below, apparently, was of a different impression.

The libellant, the husband, brought this action of divorce from the bond of matrimony against his wife, on the ground of wilful and malicious desertion, alleging that she had never lived and cohabited with him as his wife, and fixing the date of marriage, March 18, 1915, as the date of the desertion. Subsequently he amended his libel by fixing July 22, 1915, as the date of desertion and setting up cruel and barbarous treatment and indignities to the person as additional grounds of divorce. The master recommended a divorce on the ground of desertion, the evidence being clearly insufficient to sustain the other charges. The court below dismissed exceptions to his report, stating that the argument in their support had failed to convince it of error in the report; and entered a decree of divorce as recommended.

Some emphasis has been laid by the master and the court below on the circumstances which brought about the marriage, the libellant's youth, his nonemployment at marriage and meager salary thereafter and inability to support his wife. For these circumstances the libellant was as much to blame as the respondent. The marriage, as we view it, was not the result of any chivalric desire on the part of libellant or his mother to protect respondent, but was an easy method of escaping punishment for a serious offense. But however the marriage was brought about, once entered into, the libellant's duties and obligations were no different from those resting upon any other husband, and they included the care, maintenance and support of his wife.

He never contributed anything to her support, until proceedings were begun by her in the municipal court in 1917 and then only for a few weeks. He paid none of her hospital expenses when their child was born; he contributed nothing to its burial when it died a few days later. She was compelled to maintain herself by her own labor as a domestic servant. He never provided her with a home, though he admits cohabiting with her until her baby was born. He testifies that he offered to take his wife to the home of his widowed mother, who occupied a small one-story house which rented at $6 per month, and that she refused to go. He admits that this was the sum total of his efforts in that direction. His mother testified that the house contained a parlor, bed-room, dining room and out-kitchen; that she slept on a cot in the parlor, and the bedroom was occupied by her son and a boarder, a railroad worker, in whose name the house was rented from the railroad company. Later on she said the boarder worked mostly at night and slept in the daytime in a folding bed in the dining room. Her testimony differs from his. It is clear that there were only two beds in the house, including the folding bed, and just how the young wife could have been furnished with decent living arrangements there does not appear. She testified that the only night she slept at her husband's home, she and her husband and his mother occupied the one bedroom. Furthermore, the house was not rented or maintained by the libellant, but by his mother, and we are not satisfied that she asked or urged respondent to live with her. Their relations, apparently, were not very friendly from the start. See Reynolds v. Reynolds, 62 Pa. Superior Ct. 280 and McCampbell v. McCampbell, 64 Pa. Superior Ct. 143. Respondent, on the other hand, maintained that she had never been asked by libellant or his mother to make her home with them. That crowded as were the accommodations she would have gone if she had been asked; that she was constantly urging him to take her with him and was al-

ways ready and willing to live with him if he would provide a room where they could live together; that he always refused on the ground of his poverty. She is corroborated in this by her famliy. Her request was not unreasonable. If a wife is willing to live with her husband in the marriage relation, but he is too poor to provide even one room where they may live together, her living separate and apart from him until he is able to give her a home does not amount to a wilful and malicious desertion; and by a home we mean conditions that do not require the sharing of a bedroom with some one else. As was said in Ingersoll v. Ingersoll, 49 Pa. 249, "Poverty, idleness, unthriftiness, are great evils when they drive a wife into separation from her husband, but they must not be mistaken for the high crime of malicious desertion." The libellant's poverty may have prevented his supporting his wife and securing decent living quarters for her, but it furnished no justification for a decree of divorce on the ground of wilful and malicious desertion, if she was always ready and willing to live with him as soon as he was able to provide her with even the humblest home.

The real trouble seems to have been that libellant had little affection for his wife and did not desire to maintain marital relations with her.

On November 22, 1915, he wrote her that he never wished to see her face again; that he looked on her with a feeling of contempt and scorn; that she was his wife in name only and should keep to herself and if she desired to communicate with him to do it only by letter. On April 12, 1917, less than two years after the alleged date of desertion, he enlisted in the army, falsely swearing he was a single man, and allotting a part of his pay to his mother. On August 17, 1917, while still in this country, he wrote her: "You know that I will never leave my mother and I know you would not want to live in the same house with her. So you can easily see there is not much chance of our living together." He remained in

the service until May 21, 1919, and during all that time his allotment was paid to his mother, except during the last three months when it was paid his wife and she divided it with his mother. As soon as he came back (within a week or ten days, according to his own admission), she urged him to live with her. His complaint seems to have been that she kept pestering him with her demands that he provide a home and live with her. Apparently in reply to her importunities he wrote as follows: "If you look back a few years I feel sure you can easily see why I would never consider trying to live with you. I realize I made no home for you and gave you very little money but I was unable to do so. Now however due to the fact that I have been working here for some time, I am getting a little more money than formerly and I am willing to share it with you, but living with you is entirely out of the question. I intend to let the divorce suit go through absolutely and even though I never get it, there is not a person or court in the world that can compel me to live with you."

It is unnecessary to discuss the evidence further. His letters are more convincing than his oral testimony and satisfy us that he never wanted his wife to live with him and that her separation from him was due to his failure to provide a place where they could live together. We are all of opinion that the evidence fails to sustain the libellant's complaint.

The amended assignments of error, filed by leave of court, are sustained. The decree is reversed and the libel is dismissed at the costs of the appellee.