Joseph M. Nacrelli and Henry R. Nacrelli, Executors of the Last Will and Testament of Henry Nacrelli, Deceased, Substituted as Parties Appellee, in Place of said Henry Nacrelli v. Helen Orr Nacrelli.

*Divorce—Adultery—Evidence—Connivance—Proof of.*

In the trial of a libel in divorce, the inquiry is not whether there is evidence to support the findings of the Master, but whether, on the whole record, the Court is satisfied that a decree should be granted or refused.

A libel in divorce on the ground of adultery will be dismissed, where the record shows that the libellant connived at and corruptly assented to the conduct of his wife, for the purpose of making it a basis of the action. Such connivance is a bar to the granting of a decree.

Argued December 16, 1925. Appeal No. 25, October T., 1925, by respondent, from decree of C. P. Delaware County, March T., 1922, No. 226, in the case of Joseph M. Nacrelli and Henry R. Nacrelli, Executors of the Last Will and Testament of Henry Nacrelli, Deceased, Substituted as Parties Appellee, in Place of said

Henry Nacrelli v. Helen Orr Nacrelli. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Reversed.

Libel in Divorce.

The facts are stated in the opinion of the Superior Court.

The case was referred to Frank G. Perrin, who recommended that a decree be granted. On exception to the Master's report the court dismissed the exception and granted a divorce. Respondent appealed.

*Error assigned* was the decree of the Court.

*John B. Hannum, Jr.,* of *Hannum, Chadwick, Hannum & Weeks,* and with him *Albert Dutton MacDade,* for appellant.

*William C. Alexander,* for appellee.

OPINION BY LINN, J., February 26, 1926:

The libel charged adultery with John Troffo on various dates in February and March 1922. The answer denied it and averred that libellant sought to persuade her to institute proceedings in divorce; that on her refusal to do so, he replied that he would "get her"; that he conspired with John Troffo and others to induce respondent to commit adultery, in consequence of which she "had innocently been in the presence of the conspirators aforesaid........" Each side offered testimony on those issues. The master recommended the decree prayed for and the court below concluded "that the finding of the master that the respondent was guilty of adultery is warranted by the evidence." Appellant challenges that conclusion, the manner in which it was reached, and its effect.

1. If, as appellant contends, (and the opinion seems to indicate) the court below examined the record only

to see whether there was sufficient evidence to support the finding of the master that respondent committed adultery, her contention must be sustained, for it is well settled that the inquiry in divorce cases is not whether there is evidence to support the findings of the master, but whether on the whole record the court is satisfied that a decree should be granted or refused: Burns v. Burns, 84 Pa. Super. Ct. 489.

2. We need not determine whether appellant was guilty of adultery, for we are entirely satisfied that the record shows libellant's connivance,—his corrupt consent to her conduct complained of, and that his connivance bars a decree for him. Fisher v. Fisher, 74 Pa. Super. Ct. 538; Act of March 13, 1815, sec. 7, 6 Sm. L. 288.

Following meretricious relations of nearly two years' duration, the parties were married September 9, 1920, by a Justice of the Peace. Immediately after the wedding he took her to what had been her home, and "at the front gate" and "while he was leaving [her] out, he said, 'Now, you can go to hell,' " an incident he did not deny when it was called to his attention. At the time of the marriage she was about 36 years of age and he eleven years older, a widower with five children. In less than two months after their marriage, respondent's child was born. It was apparently not until August 1, 1921, that respondent joined libellant at his home; he was a hotelkeeper; she continued to reside with him there for three weeks; at the end of that period, he, armed with a butcher knife, drove her out, after assaulting her. That occurrence he admitted, but stated that he drove her out because she threatened to poison him; she denied the threat. After that, they lived apart. She was a trained nurse, and was so employed at various times. Libellant testified that as a condition of his marrying her, he exacted from her a promise that "she would give me [libel-

lant] a divorce'', and that he advised her that "she was very foolish to attend'' the master's meetings.

3. Libellant also testified that in February 1922, his wife telephoned him that she was being annoyed by John Troffo, saying "I wish you would tell him to stay away from me'', and that he replied he "had nothing to do with it and furthermore she was big enough to protect herself''. Obviously that utterance, which we accept because it comes from him, is something more than confessed indifference; in the light of his treatment of his wife from the time of their marriage, it becomes very significant in connection with the charge of connivance and conspiracy. There is evidence that he threatened to destroy her faithfulness to him. His relations with Troffo were cordial; we do not credit his denial of that fact. He employed a bar-keeper whose wife introduced Troffo to respondent in February 1922, and on two of the four occasions when adultery is said to have been committed, she was of the party. Indeed, respondent's explanation of her own presence in Troffo's company on each of the four instances absolves her— if believed—from guilt; but that is a matter as to which this court need not now express any belief. The apparent abuse of the process of arrest of respondent alone, followed by its abandonment in circumstances perhaps too meagrely stated in the evidence to be made the basis of substantial inference here, save with essential qualifications, would also seem to indicate that instead of protecting his wife, he was driving her out; if that inference should not be made why was the process not served in Delaware County, where she resided and where the alleged crime was committed? Why abandon it? Why not take Troffo too? and, what is more essential, was the process legally issued?

But we need not abstract from the voluminous rec-

ords,* nor otherwise refer to, all the circumstances of significance detailed in the evidence; it is sufficient to say that this court is satisfied that libellant connived at and corruptly assented to the conduct of his wife for the purpose of making it the basis of this suit and that such connivance is a bar to the decree asked for by him.

The decree is reversed and the record is remitted with instructions to dismiss the libel at the cost of the appellees.

*In his report, the master stated: "The case in the end rests entirely on the question as to which side is to be believed, as the evidence produced in behalf of the libellant if unanswered, clearly contains sufficient grounds for a divorce...... while the evidence produced in behalf of the respondent if believed constitutes...... a state of facts......from which a conspiracy might be inferred.",