## Rinoldo *v.* Rinoldo, Appellant.

Argued December 9, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

*Reuben Levi*, with him *Joseph L. Fox*, for appellant.

*Harry A. DeMar*, for appellee.

OPINION BY RHODES, J., January 29, 1937:
Frank Rinoldo, the libellant, brought an action **for**

divorce a vinculo matrimonii against his wife, Rose Rinoldo. The libel was filed March 12, 1931, alleging as grounds for divorce (1) cruel and barbarous treatment endangering his life; (2) indignities to his person such as to render his condition intolerable and life burdensome; (3) desertion.

The master recommended the divorce on the first and second grounds. Exceptions to the master's findings and recommendations were filed by respondent and dismissed by the court below; and the divorce was granted on the grounds recommended by the master. The respondent took this appeal December 1, 1932, but, for some reason not apparent from the record before us, the case was not argued until December 9, 1936. The final decree is assigned as error.

The burden is upon the libellant to prove his case by clear and satisfactory evidence, and there must be a preponderance of the evidence in his favor. *Sleight v. Sleight,* 119 Pa. Superior Ct. 300, 181 A. 69.

If the issues of fact have been determined by a jury, the duty of this court is to examine the testimony for the purpose of ascertaining whether there is evidence to support the verdict. *King v. King,* 113 Pa. Superior Ct. 285, 173 A. 432.

Where, however, as in this case, the action is heard before a master, we are obliged to make an independent investigation of the evidence in order to learn whether it does in truth establish a legal cause for divorce. *King v. King,* supra; *Sleight v. Sleight,* supra; *Mertz v. Mertz,* 119 Pa. Superior Ct. 538, 180 A. 708. The same obligation devolves upon the court below *(Wagner v. Wagner,* 112 Pa. Superior Ct. 485, 494, 171 A. 419, 422), and its performance of this judicial function is mandatory. *Langeland v. Langeland,* 108 Pa. Superior Ct. 375, 379, 164 A. 816, 817. "The Divorce Law" of May 2, 1929, P. L. 1237 (23 PS §1 et seq.) did not relieve our appellate courts, or those of original jurisdiction, of

these responsibilities *(Wagner v. Wagner,* supra; *Brown v. Brown,* 121 Pa. Superior Ct. 74, 183 A. 90; *Langeland v. Langeland,* supra), which it had been their duty to discharge under previous statutes and decisions.[1]

The court below erroneously stated in its opinion that "the only criterion that should be considered by the court, when exceptions have been taken to the findings of the master, is whether manifest error has been committed by him"; and that "the master's office is analogous to that of a jury which constitutes a fact-finding body."

Section 36 of The Divorce Law of 1929 (23 PS § 36) provides that: "When neither of the parties takes a rule for a jury trial, or when, after hearing, the rule is discharged, the court may proceed to hear the cause, or may, upon motion of either party, appoint a master to take testimony and return the same to the court"; and section 54 of that act (23 PS § 54) is as follows: "Where a master has been appointed, he shall make a report to the court of the proceedings had before him, and his opinion of the case." This act does not confer on the master the same power as an auditor or a master

---

[1] Act of March 13, 1815, P. L. 150, 6 Smith's Laws 286; Act of March 10, 1899, P. L. 8; Act of April 20, 1911, P. L. 71. Duty of appellate courts: *Angier v. Angier,* 63 Pa. 450 (1870); *Middleton v. Middleton,* 187 Pa. 612, 41 A. 291 (1898); *Mendenhall v. Mendenhall,* 12 Pa. Superior Ct. 290 (1900); *Hull v. Hull,* 14 Pa. Superior Ct. 520 (1900); *Howe v. Howe,* 16 Pa. Superior Ct. 193 (1901); *Edgar v. Edgar,* 23 Pa. Superior Ct. 220 (1903); *Rishel v. Rishel,* 24 Pa. Superior Ct. 303 (1904); *Heimer v. Heimer,* 63 Pa. Superior Ct. 476 (1916); *Micheals v. Micheals,* 65 Pa. Superior Ct. 464 (1917); *Burns v. Burns,* 84 Pa. Superior Ct. 489 (1925); *Nacrelli et al. v. Nacrelli,* 288 Pa. 1, 136 A. 228, affirming 87 Pa. Superior Ct. 162 (1926). Duty of court below: *Middleton v. Middleton,* supra; *Howe v. Howe,* supra; *Rishel v. Rishel,* supra; *Edgar v. Edgar,* supra; *Micheals v. Micheals,* supra; *Burns v. Burns,* supra; *Nacrelli et al. v. Nacrelli,* supra.

in equity, nor does it give his findings of fact and recommendations the force and effect of findings of fact by them. The master's report does not come to the court of common pleas, or to this court, with any preponderating weight or authority which must be overcome by the respondent. While the master's report is entitled to the fullest consideration because of his personal contact with the witnesses, nevertheless the court of common pleas must still be satisfied by its own knowledge of the testimony that the averments of the libel have been proved by full and competent evidence before a decree can be granted. *Burns v. Burns,* 84 Pa. Superior Ct. 489; *Rommel v. Rommel,* 87 Pa. Superior Ct. 511.

Libellant and respondent were married January 25, 1930, after a week's acquaintance, as the result of an introduction by one of libellant's witnesses who testified that "she [respondent] asked me if I could look around and find her a good man, because she was then a widow." Libellant was born in Italy and came to this country in 1913. He was a naturalized citizen, and has been a resident of Philadelphia since 1916. Respondent was born in Hammonton, N. J., and was also a resident of Philadelphia when this action was brought and for some time prior thereto. At the time of the hearing, both parties were fifty-two years of age. They lived together until June 18, 1930, when respondent left libellant without any plausible reason. Both parties had been married previously; and respondent had a child, by her first marriage, who lived with the parties during the four months and three weeks of their married life.

The marital troubles between libellant and respondent began the first day they were married. She accused him of certain physical defects, and said she wanted to live with somebody else. She often made the same humiliating allegations to others, who testified and cor-

roborated libellant. She called him vile names, and accused him of being a drunkard. In the presence of others she spit in his face, and on one occasion, at least, grabbed him by the throat and struck him over the head with a bottle. Respondent refused to do the family laundry, to clean the house, or to cook for libellant. During the short duration of their married life libellant lost thirty-five pounds in weight.

Employed for seventeen years as a laborer by the Baltimore & Ohio Railroad Company, libellant's wages averaged $35 per week, and, according to his testimony, he gave his entire earnings to respondent as long as they lived together. Respondent admitted that libellant gave her all his wages during the first three months after their marriage. Respondent continually expressed dissatisfaction with his earnings, and on several occasions threatened to poison him. She made various financial demands upon him, and particularly sought to have the property which libellant owned, and in which they lived, conveyed to her. Witnesses for libellant testified to statements by respondent that she had no use for him; that she would leave unless he put the house in her name; and that he was merely a "dying Moses." She also suggested to libellant that they use their home for prostitution, and in that way increase their income. At least two witnesses testified that they were approached by respondent and requested to use their influence to have him give her $300 to $500, in consideration of which she would leave him alone. She complained to others that libellant was not earning a sufficient income, and that only a "dummy" worked on a railroad track.

Respondent made numerous telephone calls to the superintendent's office of the railroad company, and annoyed the officials with inquiries as to libellant's whereabouts. Her actions in this respect nearly resulted in his discharge. With reservations, the respondent ad-

mitted these calls and the fact that a foreman under whom libellant worked visited her and requested that she cease such conduct. The evidence of this foreman and other witnesses attested libellant's sobriety.

The evidence shows that respondent's attitude toward libellant was one of manifest hatred, contempt, and hostility. Her language was vulgar, and her references to his alleged physical incapacity, made to him and to others, were most indecent. The short space of time during which the libellant and respondent lived together naturally afforded but little opportunity for corroborative testimony as to respondent's conduct toward libellant; but the evidence is sufficient to show that her conduct during this time was one of continued indignities. Notwithstanding the fact that respondent denies virtually every statement made by libellant, still her testimony is in some respects corroborative of libellant's. In many instances her testimony is improbable and fails to create any confidence in its truth or accuracy. The testimony indicates that respondent's misconduct was not sporadic but continuous; that she was mercenary, avaricious, and interested in financial gain rather than the performance of her marital duties; that she displayed a manifest hate and contempt for the libellant; and that she was devoid of any affection for him. Her leaving on June 18, 1930, is significant because it nowhere appears that there was any justification or valid reason for this action on her part.

To sustain the decree in this case on the ground of cruel and barbarous treatment, endangering libellant's life, it is necessary that the evidence establish or show actual personal violence or reasonable apprehension of it, such as to endanger his life and render cohabitation unsafe. *Putt v. Putt,* 118 Pa. Superior Ct. 74, 180 A. 92. Our examination of the testimony convinces us that the decree cannot be granted on that ground.

"It has been repeatedly stated that 'it is impossible

to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. It has been held by many courts (see 14 Cyc. 623) that they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient' ": *Sharp v. Sharp,* 106 Pa. Superior Ct. 33, at page 35, 161 A. 453, at page 454. See, also, *Kett v. Kett,* 117 Pa. Superior Ct. 236, 177 A. 509; *Putt v. Putt,* supra; *Hagan v. Hagan,* 120 Pa. Superior Ct. 582, 182 A. 654; *Sleight v. Sleight,* supra; *Upperman v. Upperman,* 119 Pa. Superior Ct. 341, 181 A. 252.

Although we are of the opinion that the evidence establishes such a course of conduct or continued treatment as to render libellant's condition intolerable and life burdensome, and that he is entitled to a divorce a vinculo matrimonii on that ground, we are nevertheless of the opinion that the testimony does not establish cruel and barbarous treatment.

We sustain the decree of the court below on the ground of indignities to the person.

The decree is affirmed.