## Pearce, Appellant, *v.* Pearce.

*Divorce—Desertion—Consent—Evidence.*

1. A libel for divorce by a husband against his wife for desertion will be dismissed where the great preponderance of the evidence is in favor of the conclusion that, if the libelant did not actually expel his wife from his house, she left by and with his consent and expressed wish.

2. A guilty intent to desert is rebutted where the separation is encouraged by the other party, or by mutual consent. Mutual consent to a separation, not revoked by either party, is as fatal to an application for a divorce upon the ground of desertion as would be acts on the part of the libelant which would give the respondent legal cause to leave him, and to obtain a divorce from him.

Argued Dec. 12, 1912. Appeal, No. 129, Oct. T., 1912, by plaintiff, from decree of C. P. No. 5, Phila. Co., June T., 1910, No. 88, dismissing libel for divorce in case of Martin C. Pearce v. Emma C. Pearce. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Affirmed.

Libel for divorce.

The facts are stated in the opinion of the Superior Court.

*Error assigned* was decree dismissing the libel.

*William A. Hayes,* for appellant.—Willful desertion was established: Smith v. Smith, 15 Pa. Superior Ct. 366; Hedderson v. Hedderson, 35 Pa. Superior Ct. 629; Ingersoll, 49 Pa. 249; Middleton v. Middleton, 187 Pa. 612; Hull v. Hull, 14 Pa. Superior Ct. 520; King v. King, 36 Pa. Superior Ct. 33; Golden v. Golden, 36 Pa. Superior Ct. 648; Detrick's App., 117 Pa. 452; Sowers's App., 89 Pa. 173; Border v. Border, 21 Pa. Dist. Rep. 749.

*Leon J. Obermayer,* with him *Howard Schell Baker* and *Franklin Spencer Edmonds,* for appellee.—The libelant is bound to establish that there was a desertion by the respondent which was willful and malicious and without reasonable cause before he is entitled to a decree granting him a divorce a vinculo matrimonii, and the evidence fails to meet the legal requirements: Ferree v. Ferree, 19 Pa. C. C. Rep. 67; Dearmin v. Dearmin, 55 Pitts. Leg. J. 15; Golden v. Golden, 36 Pa. Superior Ct. 648; Ferreira v. Ferreira, 46 Pa. Superior Ct. 129; Capwell v. Capwell, 8 Lack. Jur. 136; McCune v. McCune, 31 Pa. Superior Ct. 248.

A decree of divorce a vinculo matrimonii will not be granted where the libel charges desertion and the evidence establishes nothing more than a separation brought about by a mutual inability of both libelant and respondent to endure each other's society: Muller v. Muller, 18 Pa. C. C. Rep. 400.

OPINION BY RICE, P. J., February 27, 1913:

The libel in this case charged willful and malicious desertion on the part of the respondent, and the latter's answer set up, as justification for her separation from the libellant, his cruel and barbarous treatment and adultery. The evidence is insufficient to sustain the charge of cruel and barbarous treatment, and, as we view the case, its sufficiency or insufficiency to sustain the charge of adultery need not be decided. The undisputed fact is that the respondent left her husband's house on October 18, 1907,

and has not since returned or offered to return. It is also a fact that he has not since asked her to return, and, according to his testimony, he never will. We mention the latter fact for the purpose of showing that, if the separation was not in its inception a willful and malicious desertion on the respondent's part, it did not become such by her refusal of a subsequent bona fide offer of reconciliation. It is clearly deducible from the testimony that for some years before the separation the parties had not lived happily together, and that the principal cause of the unhappiness was that each suspected and accused the other of infidelity. We need not discuss nor express any opinion as to these counter-accusations. It is sufficient, for present purposes, to refer to what occurred on October 17, the day before the separation took place. The libelant testified that he accused his wife of certain things and told her they must be stopped then and there "if we wished to get along together and remain together." Being asked what he accused her of, he answered: "I accused her of infidelity," and being asked what she said, he replied: "She simply notified me that she was going to quit and she got out. . . . I accused her on the 17th and she left on the 18th." We also quote from his cross-examination: "I thought that she was allowing my daughter to go out a little more than I wanted. I had spoken to her concerning both my daughter and herself. Q. About what? A. I wanted them to stay at home and not be out until twelve and one o'clock at night. Q. Did anything occur then? A. My daughter said she would leave home and I told her that I was perfectly willing she should go, as she was able to take care of herself. I told her to take care of herself. This was on Thursday night and on Friday they both packed up and went away. Q. Did you strike either of them? A. No, I never struck anybody. Q. Did you use any abusive language towards your wife or daughter? A. None whatever. I spoke in a determined way that any man might speak in his own home. Q. Have you ever asked your wife to return to

you? A. I never have nor never will. Q. Have you written to her? A. I never have." The only other witness called by the libelant to prove the desertion testified that some years later the respondent said to her she had left a good home. "She said she just got tired and that was all. She told me he was a good provider and that she always had whatever she wanted." With regard to this testimony we remark that it is not strange that the respondent did not detail to this witness the occurrences between herself and her husband the day before she left. The respondent in her testimony denied most emphatically that she had been guilty of infidelity, and alleged that the controversy that took place on the seventeenth arose principally out of accusations of improper conduct the libelant made against their daughter, that he made a move as if to strike the daughter, and, when the respondent interfered, he ordered both of them out of the house. Her testimony is strongly corroborated by the direct testimony of a witness who was present, that he heard the libelant order his wife and daughter out of the house and that they left the next day.

It is worthy of notice that the libelant does not allege that, when his wife told him she would leave, he objected or requested her to stay. His conduct since, and his declaration on the witness stand, while not tantamount to express consent to the separation, are entirely consistent with the conclusion that it was not against his wish. This alone would not constitute a defense. But viewing the testimony as a whole, the great preponderance is in favor of the conclusion that, if the libelant did not actually expel his wife from his house, she left by and with his consent and expressed wish. This was sufficient to repel the inference that her separation from him was willful and malicious desertion, and, therefore, to defeat his application for divorce. "Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, willfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested

when, without cause or consent, either party withdraws from the residence of the other:" Ingersoll v. Ingersoll, 49 Pa. 249. The guilty intent to desert is rebutted where the separation is encouraged by the other party or by mutual consent. Mutual consent to the separation, not revoked by either party, is as fatal to an application for a divorce upon the ground of desertion as would be acts on the part of the libelant which would give the respondent legal cause to leave him and to obtain a divorce from him. Thus, in Butler v. Butler, 1 Pars. Sel. Eq. Cases, 329, Judge KING said: "The malice of the desertion arises from its being the perverse act of the one, in refusing the performance of the matrimonial obligations and duties, which the other has the legal right to require. But when such separation has been the result of mutual arrangements, and these clearly established in proof, then each are in equal fault in this particular, and neither can claim a legal right against the other, in consequence of an act in which he or she has been an equal participant. Such assent or acquiescence, however, are revocable acts." This doctrine was recognized in Ingersoll v. Ingersoll, 49 Pa. 249, and has been recognized in many later cases, amongst which may be mentioned Graham v. Graham, 153 Pa. 450; Middleton v. Middleton, 187 Pa. 612; Hull v. Hull, 14 Pa. Superior Ct. 520; Olson v. Olson, 27 Pa. Superior Ct. 128; King v. King, 36 Pa. Superior Ct. 33; and Kelly v. Kelly, 51 Pa. Superior Ct. 603. In the last cited case we referred at some length to the other authorities, and need not go over the ground again. Our conclusion is that the court was right in holding that a willful and malicious desertion had not been established, and in dismissing the libel for that reason.

The decree is affirmed at the costs of the appellant.