## Lane, Appellant, v. Lane.

*Divorce—Desertion—Evidence—Insufficiency.*

In an action for divorce on the ground of desertion, a decree is properly refused, where it appears that the libellant encouraged a separation, and thereafter did nothing to bring about the resumption of marital relations.

Argued April 27, 1923. Appeal, No. 145, April T., 1923, by libellant, from decree of C. P. Allegheny Co., July T., 1922, No. 1658, refusing to grant a divorce in the case of William G. Lane v. Emma S. Lane. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Libel in divorce. Before CARPENTER, J.

The case was referred to George P. Henning, Esq., as master, who recommended that a divorce be granted. On exceptions to the master's report, the court sustained the exceptions and refused to grant a divorce. Libellant appealed.

*Error assigned*, among others, was the decree of the court.

*William N. McNair*, for appellant.

*W. H. Coleman*, for appellee.

OPINION BY GAWTHROP, J., July 12, 1923:

The parties to this action for divorce were married September 10, 1914. The husband was then about the age of sixty-two years and his wife was about fifty. After their marriage they lived in the husband's home in Turtle Creek, Allegheny County. On May 31, 1922, the libel in this case was filed by the husband, seeking a divorce on the ground of wilful and malicious desertion, which he

declares had been continuous since August 25, 1920. He testifies on direct examination that on that day his wife "moved all her stuff on a team"; that she wished him "all the luck in the world and a good time and prosperity," and that he wished her the same; that since that time she had never been to his house; that he had seen her several times on the street, but that he had never talked to her or asked her to come back; that he provided amply for her and gave her no cause for leaving. On cross-examination he was asked what conversation he had with his wife at the time she left, and the record shows the following: "Q. What was that conversation? A. Well, it was this, she said, 'I want to see if we can't get along a little different from what we have been getting. I am going away on a vacation and if we can't I am not coming back.' Q. What did you say to her? A. I said to her, 'whenever you make up with the other boys and my family, and we all can come here and be one family, then we possibly might be a little different, but the way it is now it can't be. You don't allow your boys to come and you don't allow mine to come; you drove them away from the house. She didn't her own, but she did mine......' Q. Did you ever tell her to leave your home? A. I don't believe I ever did tell her to leave my home. Q. What did you say to her about leaving? A. She said she was going to leave. I asked her one time, 'I thought you were going to leave.' She said, 'I am some of these days.'" The respondent testifies that during the latter part of 1919 and during 1920, up to the time she left, her husband invited her several times to leave him and said she "hadn't the nerve to go"; that she complained to him many times of the treatment accorded her and talked to him about living under more favorable conditions, and that he said, "we might as well live apart." In reference to the separation, on August 25, 1920, her testimony is: "Q. Now, Mrs. Lane when you left did you have any conversation with your husband? A. I did. Q. Tell the master what that conversation was. A. Mr. Lane had

eaten his dinner and I said to him, 'I want to speak to you.' He was going to ignore me as usual and go out and I insisted upon him sitting down. He sat down and I told him, 'now Will I expect to go away on a couple of weeks' vacation and things are very bad here; don't you think we could do better?' He said, 'we might as well live apart; you drove my children out of the home ......'" The respondent gave considerable testimony as to the libellant's mistreatment of her. The testimony of the witnesses other than the parties throw little or no light upon the question involved. All of the judges of this court concur with the learned judge of the court below that a case of wilful and malicious desertion was not made out. The record compels the conclusion that if the separation was not actually consented to by the husband, it met with his approval and was encouraged by him. Although, during the interval between the filing of the libel and the hearing, the parties resided in the same town and frequently met on the street, the libellant never spoke to the respondent nor invited her to return. As was said by Judge TREXLER in Reynolds v. Reynolds, 62 Pa. Superior Ct. 280, "there appears to have been no attempt on his part at any time to relieve the situation or to open the way for the wife's return. The conclusion is justifiable that he did not care for his wife's presence and companionship." On the libellant's own testimony, the separation was one encouraged by him. This is not wilful and malicious desertion: Middleton v. Middleton, 187 Pa. 612; Crandall v. Crandall, 66 Pa. Superior Ct. 153. The guilty intent to desert is rebutted where a separation is encouraged by the other party or by mutual consent: Neagley v. Neagley, 59 Pa. Superior Ct. 565. While a failure on the part of a husband to invite his wife, who has left his house, to return is not in all circumstances fatal to his suit for divorce on the ground of desertion, if the husband speeded the parting and indicated by his acts that he wished her to go, the separation must be regarded as consentable on his part, and the

494, (1923).]          Opinion of the Court.

status so remains until he makes a bona fide offer to resume marital relations: Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241. In the language of Judge HEAD in Bracken v. Bracken, 77 Pa. Superior Ct. 219, a case strikingly similar to this, it is not the policy of the State of Pennsylvania to permit divorces to be so easily obtained as they could be were a divorce to be granted in a case like the present one.

The decree is affirmed at the cost of the appellant.