## Williams, Appellant, *v.* Williams.

*Divorce—Desertion—Evidence—Insufficiency.*

A libel in divorce is properly dismissed where the evidence established that respondent had been living with libellant at the home of their son-in-law; that the latter had compelled respondent to leave the house; that the libellant had done nothing to prevent such action and had subsequently failed to provide another home for her.

Separation is not desertion. The respondent having been compelled to leave the only home which her husband had provided for her, her going was neither a wilful nor a malicious desertion, and the libel is properly dismissed.

*Divorce—Duty of court—Independent judgment.*

It is the duty of the judge, in passing upon libels in divorce, to exercise their own independent judgment as to the law and the facts, and not merely to sustain the report of the master, upon the ground that there is sufficient evidence to support his findings, without careful consideration of all of the evidence presented.

Argued May 5, 1925. Appeal, No. 211, April T., 1925, by libellant, from decree of C. P. Allegheny Co., Jan. T.,

Statement of Facts—Opinion of Court below. [85 Pa. Superior Ct.
1923, No. 2129, in the case of Walter Williams v. Anna
Jane Williams.   Before PORTER, HENDERSON, TREXLER,
KELLER, LINN and GAWTHROP, JJ.   Affirmed.

Libel in divorce.   Before FORD, DOUGLASS and REID, JJ.

The facts are stated in the opinion of the Superior
Court.

The case was referred to James W. Collins, Esq., as
master, who recommended that a divorce be granted.

Subsequently, on exceptions to the master's report,
the court in the following opinion by REID, J., sustained
the exceptions and dismissed the libel.

This is a libel in divorce.   The husband charges the
wife with wilful and malicious desertion.   An answer
was filed denying the desertion and alleging, as against
the libellant, cruel and barbarous treatment, indignities
to the person, and adultery.

A master was appointed, who, after taking 173 pages
of testimony and giving careful consideration to all the
facts, as he saw them, filed a report recommending a
decree.   To this report respondent has filed exceptions,
and we are now to pass upon the question of sustaining
or overruling the master.

Although, as hereafter indicated, we cannot agree
with the learned master's conclusions, we nevertheless
commend his vigilant observance of the rules of pro-
cedure, his restraining counsel in accordance with the
divorce rules, his directing the hearing within proper
bounds, and the form and analytical and logical method
of his report.

Our view differs from that of the master as to the
alleged desertion.   He finds that the conduct of the
husband was not of such a character as would justify
desertion, and especially that, after many years, and
undoubted condonation, the charge of adultery should
not now prevail to establish such justification.   So with
regard to many of the alleged instances of physical abuse

or indignities. They occurred so long ago that we agree with the master that there should be some reasonable period after which stale charges should not be again revived. But we do not agree with the learned master in not considering the entire effect of such a life upon the unhappy litigants, and in not asking himself whether the animus he finds in the respondent's testimony and expressions is not due to the long past conduct of the libellant, as one who had forgotten his marriage vows, lived with a woman whom he called "wife" whilst absenting himself from the home and society of his own legal, and undoubtedly faithful, wife. Condonation may be properly found, but that did not erase from the wife's memory the recollection of her husband's conduct. It is clear that they lived unhappily for a long time previous to the alleged desertion. The master says that he found it difficult to determine upon which side lay the truth; but, finally, by eliminating the testimony of the wife and her daughters (the two who side with her) as incredible, by reason of the bitterness and demeanor already referred to, he turns the scale in favor of the libellant. This, too, in spite of libellant's violation of his marriage vows and in spite of his standing by and seeing and hearing his wife (who had not wronged him) ordered out of his son-in-law's house.

We do not doubt that the wife, by her apparent venom and vindictiveness, did cause the master to pause and finally rule against her. But we are inclined to believe that the pent-up wrongs of a long married life came rushing to this woman's mind, and that the existence of bitterness, under the circumstances, may not have been a true and reliable index of credibility.

We cannot agree with the master that an unfaithful husband, whose moral standard is so low as to induce him to live in adultery, in a Northside rooming house (wherein he was found by his wife and daughters) should be viewed as worthy of belief against a virtuous (even if venomous) wife.

We are convinced, not that the husband drove his wife from such home as they had, by his conduct at and within a reasonable time before the alleged desertion, but that the son-in-law did in fact order the respondent from his house, and she had to go. It was not her house or home (in the true sense), nor even her husband's. He, in effect, never interposed when the order to go was given. Not only did he not, but he arranged for his wife's going by the interview at the shop (had before the actual departure), in which he agreed to pay a certain sum for his wife's maintenance whilst living apart, and another sum for that of the daughters who went with her. He did not drive her from the home, it is true; but he knew that she was ordered out, must go, and he, in effect, voluntarily assisted in her going and remaining away.

There is no occasion to quote the testimony. We have read it. The son-in-law admits that he ordered her out of his house, but says she went of her own accord,— a very inconsistent and incredible statement. The thoughtful offer of the daughter to turn over the lease and move out, leaving respondent in possession, is not at all convincing. The daughter well knew that the mother, without the support and sympathy of the libellant, could not maintain such a home. Our conclusion is that this alleged offer to move out was a sham and never meant to be accepted. We doubt that it was made as stated.

The master does not discuss the effect of the husband's conduct in arranging to maintain his wife in her alleged desertion. That arrangement, in our judgment, is the crux of the case. It clearly indicates that there was not a desertion, and that the husband well knew it; it was, in effect, a separation by consent, the continuance of which was made possible only by the husband's contributions. Those contributions of a definite sum per week continued up to the time of the trial. As we have re-

473, (1925).]    Opinion of Court below—Opinion of the Court.

cently said, in another case, on this subject, they do not necessarily mean collusion; but they do, when voluntarily made (as here) tend to indicate that the separation was not such "wilful and malicious desertion" as the law contemplates, but an absence by and with the consent of the husband.

That the desertion was philosophically accepted by the husband, will appear from the fact that he continued to live in the house from which his wife was expelled and made no efforts to have her return or establish a home elsewhere than in the discordant atmosphere of his son-in-law's house, where he and his wife were merely boarders.

We must sustain the exceptions, overrule the recommendation of the master, and dismiss the libel.

And now, October 14, 1924, after hearing, it is ordered that the exceptions ex parte respondent to the master's report be, and same are hereby, sustained, the report of the master recommending a decree is overruled, and the libel dismissed at the cost of libellant.

*Error assigned* was the decree of the court.

*Waldo P. Breeden,* and with him *Jacob Seligsohn* and *N. J. Lippard,* for appellant.

*C. William Campbell,* and with him *William LeGoullon,* for appellee.

OPINION BY PORTER, J., July 9, 1925:

The appellant filed a libel in divorce averring wilful and malicious desertion by the respondent; a master was appointed who, after taking voluminous testimony, made a report in favor of the libellant and recommended a decree of divorce. The court below sustained exceptions to the report of the master and dismissed the libel, from which decree we have this appeal.

The hearing upon the exceptions to the report of the master was before three judges of the court below, who were unanimous in the conclusion that the libel must be dismissed. The opinion by Judge REID, which will appear in the report of this case, discloses proper appreciation of the importance of the functions of the judges in divorce proceedings and a conscientious discharge of duty. The family relation lies at the foundation of our social system and divorces are not to be granted save for the very cause alleged in the libel, clearly established by evidence. The appellate courts have frequently held that it is the duty of the judges to exercise their own independent judgment as to the law and the facts and not merely to sustain the report of the master upon the ground that there is sufficient evidence to support his findings, without careful consideration of all the evidence presented. That duty was well discharged in the present case. We have examined the evidence in detail, together with the report of the master, and are convinced that the court did not err when it entered the decree that the libel be dismissed.

Without considering the previous misconduct of the husband, which was clearly established by uncontradicted evidence, and assuming that such conduct had been condoned, we will deal only with the circumstances under which the parties separated. The libellant, the respondent and their two unmarried daughters were living with a son-in-law of the parties to this proceeding, to whom the libellant was paying for the board of the family. The son-in-law, who was the husband of the eldest daughter of libellant and respondent, held the lease of the house and was thereof the absolute master. The son-in-law ordered the respondent to leave the house, and she had to go; she told the libellant that she had been ordered out and had to go and he refused to go with her. He made no effort to interpose and induce the son-in-law to permit her to remain; nor did he take any steps to provide a home elsewhere. He continued

to make his home with the son-in-law down until the time of the hearing before the master. This was a potential turning his wife out-of-doors. The husband cannot tacitly stand by and see his wife expelled from the house in which they are boarding, without making some effort to accommodate the situation so as to permit her to remain or taking steps to provide a home for her elsewhere. He must, under such circumstances, be held to have acquiesced in her expulsion. All that this libellant did was to agree to pay $15 a week to his wife for the support of herself and her two young daughters who had to go with her, which amount he continued to pay until the marriage of said daughters, when the amount was reduced and he continued to send money to his wife for her support down until the time of taking the testimony, at which time he was sending her $7.50 a week. He has never since his wife was expelled from the only home which he had provided for her offered to receive her back or to provide a home for her at any time or place, and his own testimony clearly indicates that he has not in the interval desired her companionship. Separation is not desertion. The respondent having been compelled to leave the only home which her husband had provided for her, her going was neither a willful nor a malicious desertion: Reynolds v. Reynolds, 62 Pa. Superior Ct. 280; Pearce v. Pearce, 53 Pa. Superior Ct. 129; Bracken v. Bracken, 77 Pa. Superior Ct. 219; Lane v. Lane, 81 Pa. Superior Ct. 494; Middleton v. Middleton, 187 Pa. 612.

The decree is affirmed and the appeal dismissed at cost of the appellant.