## Deitrick *v.* Deitrick, Appellant.

Argued December 10, 1928. Before TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*A. D. Knittle,* and with him *G. H. Gerber,* for appellant.

*Edgar Downey,* for appellee.

OPINION BY LINN, J., January 25, 1929:

A divorce should not be granted unless the evidence discloses a case clearly within the statute: Rommel v. Rommel, 87 Pa. Superior Ct. 513; Twaddell v. Twaddell, 95 Pa. Superior Ct. 429. Desertion is the cause alleged in this case. "Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years. The guilty intent is manifested when, without cause or consent, either party withdraws from the residence of the other." Ingersoll v. Ingersoll, 49 Pa. 249, 251; see also Neagley v. Neagley, 59 Pa. Superior Ct. 565. The master recommended the dismissal of the libel; on exception the court held otherwise and entered a decree of divorce, saying however, in the opinion filed that "this case has not been free from difficulty and has given the court much serious concern......" The wife appeals.

The parties were married January 23, 1923, when the husband, the libellant, was about 36 years of age and the wife about 42. In less than a year they separated. He was an engineer, earning $165 a month in the employ of a coal company. Prior to his marriage

he lived with and supported his mother, aged about 60. She did not approve the marriage. Libellant took respondent into the home rented by him which he maintained for himself and his mother and for a short time they got on well together. Then differences arose and the record indicates that some, if not all, must be attributed to friction between the mother and the respondent. In these disputes libellant took the side of his mother against respondent who threatened to leave unless the friction was removed; he increased it, saying with regard to conduct which need not be described here that "I was playing safe." Finally she left. She called a drayman and removed a lot of furniture. Concerning her departure her husband testified:

"Q. Did she say anything at that time?

"A. Just said, 'I am leaving,' I said, 'It is entirely up to you.' That is all the conversation we had."

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"Q. Just said she was leaving, and all you said was, 'It's up to you?'

"A. I said, 'It's entirely up to you.'

"Q. You made no objection whatsoever?

"A. None, neither asked her to stay or go.

"Q. But you were glad she was leaving, weren't you?

"A. Cant' say that I was or was not."

She testified:

"Q. Did you say anything to him then?

"A. I told him I was going to take the furniture. He said, 'Take it,' and I had the dining suite which my mother bought me for a wedding present.

"Q. And you took that?

"A. And my wedding presents."

While libellant was in a hospital recovering from injury received in the course of his employment respondent called on him and he said to her, as she testi-

fies, "Well you can get out as quick as you can," and I said, "Well you don't mean that, Jack," and he said, "Yes I do."

"Q. Get out of the home?

"A. Get out as quick as I could. Well, I didn't get out because he was sick in bed."

She also testified that "three times" in ten months he told her "to get out." She states that when she took her furniture, libellant's mother said "thank God I was gone." Notwithstanding this testimony, neither libellant nor his mother were asked to testify in rebuttal about it. Very soon after leaving she brought proceedings against him for support and in the office of the justice of the peace she offered to live with the libellant if he would provide a home; she testified "I asked him if we could not agree to rent a floor and he said he would not leave his mother. Squire Giblon tried to get the two of us together ......" A short time later respondent wrote to him offering reconciliation; he admitted receiving the letter and stated that he did not answer it. We do not doubt that her offers to return were made in good faith and that they did not receive the consideration by him which they merited: see Gordon v. Gordon, 23 Pa. Superior Ct. 216, 266; 208 Pa. 187, 188; Neagley v. Neagley, supra; Rosa v. Rosa, 95 Pa. Superior Ct. 415.

It was the duty of the libellant to maintain his wife in such home as their circumstances and station in life reasonably justified. The performance of his duty to his mother did not relieve him of performing the obligations he assumed by marrying respondent (compare Dailey's Appeal, 10 W. N. C. 20; Reynolds v. Reynolds, 62 Pa. Superior Ct. 280; McCampbell v. McCampbell, 64 Pa. Superior Ct. 143; Burns v. Burns, 84 Pa. Superior Ct. 489, 492). She was asked "In other words, you did not want to live with his mother, did you? A. I wouldn't mind it if he put me on a floor of my own and his mother in with me." The

record shows that the first effort at harmonious living (lasting less than a year) was disappointing and that libellant, though requested to do so, made no effort to ameliorate the conditions he had himself created by establishing the home for himself and wife with his mother; instead he preferred to have his wife go in the circumstances referred to. We all agree that the evidence shows that this was a consentable separation within our decisions; see Pomerantz v. Pomerantz, 71 Pa. Superior Ct. 241, and cases cited there, Lane v. Lane, 81 Pa. Superior Ct. 494. Such basis as there is for the statement of the court below that "this case is not free from difficulty," is one of the elements leading us to conclude that a clear case within the statute has not been made out.

The decree is reversed and the record is remitted with instructions to dismiss the libel; costs to be paid by libellant.