## Ringheiser v. Ringheiser.

A. D. *Knittle* and *George M. Gerber*, for libellant.

M. M. *Burke* and *P. H. Burke*, for respondent.

HOUCK, J., July 28, 1930.—This is an action for divorce on the ground of desertion. In the libel it is alleged that the desertion took place on or about February 14, 1924. This date was later amended to February 13, 1925. The master found, in effect, that respondent on February 13, 1925, willfully and maliciously deserted libellant without reasonable cause, which desertion continued for a period of more than two years. The master has recommended that a decree be entered. The respondent has filed three exceptions: The first, to the master's finding of fact respecting the desertion; the second, to his conclusion of law; and, the third, to his recommendation.

A divorce should not be granted unless the evidence discloses a case clearly within the statute. Desertion, which is the cause alleged in this case, is an actual abandonment of matrimonial cohabitation, with an intent to desert, willfully and maliciously persisted in without cause for two years. The guilty

intent is manifested when, without cause or consent, either party withdraws from the residence of the other: Deitrick v. Deitrick, 95 Pa. Superior Ct. 542. The guilty intent to desert is rebutted where the separation is encouraged by the other party or is by mutual consent. What may have been desertion in its inception, but has become a separation with mutual consent within two years, is not ground for divorce. The mutual consent that will prevent a divorce upon the ground of desertion may be inferred from the conduct of the parties and need not be put in the form of a solemn written agreement: Neagley v. Neagley, 59 Pa. Superior Ct. 565, 571. Mutual consent to the separation, not revoked by either party, is as fatal to an application for divorce on the ground of desertion as would be acts on the part of the libellant which would give the respondent legal cause to leave him: Thompson v. Thompson, 50 Pa. Superior Ct. 159, 166. Absence of any attempt on libellant's part to relieve the situation or to open the way for respondent's return justifies the conclusion that the separation was by consent: Reynolds v. Reynolds, 62 Pa. Superior Ct. 280; Bracken v. Bracken, 77 Pa. Superior Ct. 219; Grimm v. Grimm, 8 D. & C. 484.

It is our duty to examine the evidence in the light of the foregoing well established principles. It appears that the parties were married in New York City when they were each about twenty-one years of age. They had become acquainted prior to marriage in Ringtown, Schuylkill County, where both attended school. After marriage, libellant secured employment at Hazelton and respondent lived with libellant's parents in Ringtown. Some months later libellant returned to Ringtown and the parties lived together in their own home, which was given or rented to them by libellant's parents, who lived about fifty yards away. Since that time libellant has resided continuously in Ringtown, Pennsylvania. According to libellant's testimony, respondent told him the night before she left that she intended to leave the next day. He said he just joked about it and did not ask why she was going to leave, nor does he remember that she gave any reason. The next morning libellant talked to his wife and made an attempt to go to work, but missed the conveyance, whereupon he returned to his home. His wife was then packing her clothing. He said he pretended to help her and admits that he handed her some articles to be put in the package which she was preparing. He denied that he carried any of her bundles out of the house, and was then asked what he said to his wife as she carried them out and got ready to leave. His answer was: "Well, I suppose I told her if she would go she should not come back." He admitted also that he made no effort to persuade his wife to leave the articles in the house. This occurred on February 13, 1925. Respondent was then pregnant, and the child, their second, was born in the following August. Libellant testified that he did not know his wife was pregnant at the time she left. He did not see this child until during the summer of 1927, although it was living with its mother at her parents' home, about a mile and a half from libellant's home. Respondent's version of the manner of her leaving is somewhat different. She testified that her husband continually applied vile and opprobrious epithets to her and that he struck her at least once. Libellant does not deny that he used vile language, but seeks to excuse it on the ground that he did rough work, so that rough language became his ordinary speech. He admits also that he struck his wife on one occasion, which he says was several months before she left him. Respondent said that her husband assisted her in moving her belongings out of the house, that he carried out a valise and urged her to get out sooner. She said that her husband told her he would help her pack so that she could leave sooner "and told me

to get the hell out." Under the circumstances here presented, ignoring respondent's testimony entirely, the conclusion is clearly justified that libellant consented to his wife's leaving. If he did not actually consent to the separation, there is nothing to indicate that it was seriously disagreeable to him. This conclusion finds support in the subsequent events.

Some weeks after the separation respondent prosecuted her husband for desertion and non-support. Libellant was directed to pay her $40 per month. The record itself was not offered in evidence, and while the order of court is not conclusive evidence that libellant deserted his wife, it is some evidence of that fact: Grimm v. Grimm, supra. Respondent testified that at the hearing in court she agreed to return to her husband if he would live as far from his parents as they lived from her parents. While this was not an unconditional offer to resume marital relations, it is an indication that the door was not entirely closed and tends to rebut the element of malice in the separation. The offer, of course, was not accepted. About July 7, 1925, libellant was seriously injured and was removed to a hospital. His wife and child went there to visit him. His testimony as to what occurred at that time is evasive. He said that he was delirious at the time. This testimony is not corroborated. On the other hand, libellant's father, who was at the hospital when respondent called, and who testified for libellant, said respondent asked whether she could do anything for libellant, and libellant replied: "You can get out of here." Respondent said that she spoke to libellant and asked him whether he recognized her; he replied that he did, and said that he did not want to see her. According to respondent, the conversation proceeded as follows: "I said: 'We are going to have a baby, don't you want to see him?' He said: 'Get to hell out.' I said: 'Francis, do you realize what you are saying?' He said: 'Yes.'" Here, again, according to the undisputed testimony, respondent clearly indicated by her conduct a desire to return to her husband. This circumstance also tends to rebut the contention that the desertion was willfully and maliciously persisted in for a period of two years. Again, in the summer of 1927, more than two years after the separation, libellant went to respondent's home and asked permission to take his children with him, presumably for an automobile ride. Respondent said they could not go unless he took her too. His reply was that he could suit himself about that, and the outcome was that neither the wife nor the children went for a ride with libellant. Finally, at the hearing before the master, respondent reiterated her desire to resume marital relations with libellant; libellant was asked whether he was ready to take his wife back, and his reply was: "I don't feel I should now."

The foregoing circumstances, concerning which there is not much, if any, dispute, show clearly, we think, that respondent's separation was not willful and malicious. In addition to this, there is not a word of evidence that libellant ever made any effort whatsoever to have his wife return to him. Apparently he stood firm on his original resolution, that if his wife left she could never return. All of this leads to the conclusion that the separation was by mutual consent and, that being the case, libellant is not entitled to a decree: Reynolds v. Reynolds, supra; Grimm v. Grimm, supra.

The reason assigned by respondent for leaving her husband is his cruel and barbarous treatment. The reasonable cause which would justify a desertion must be such as would authorize a dissolution of the marriage bond: Rosa v. Rosa, 95 Pa. Superior Ct. 415. We agree with the master's conclusion that respondent failed to show a course of conduct on libellant's part which would entitle her to a divorce and which, therefore, would be reason-

able cause for the separation. However, it is unnecessary to decide this point, since we have concluded that the separation was by mutual consent. On this conclusion we are bound to dismiss the libel.

And now, July 28, 1930, the libel is dismissed, at the cost of the libellant.