## Ruggeri v. Ruggeri

*Claster & Claster,* for libellant.

LAIRD, J., April 19, 1940.—This petition for divorce sets forth rather unusual circumstances. The ground alleged in the libel is desertion and yet the parties never lived together. Libellant testified as follows:

"Q. Mrs. Ruggeri, after you were married, where did you live?

A. At my home in Braeburn.

Q. Did your husband live with you?

A. No, sir, not even one day or one night.

Q. Did he come to see you from time to time after you were married?

A. His comings were always forced. I would have to nag and call him.

Q. And on those occasions that you did call him, he would come and see you?

A. Not always, but sometimes.

Q. Did he ever provide a home for you?

A. No, sir.

Q. Did you ask him to provide a home for you?

A. Yes, sir.

Q. What was his answer?

A. He made answers that he could not get a job and said that he had a girl at Lasascoe, which is near Schenley.

Q. Since the time of the separation in September of 1934, you have neither seen nor heard from him, is that correct?

A. Yes.

Q. When did you get the last letter from him?

A. That was September 15, 1934. He probably took a train and just dropped the letter in as he was leaving town."

We are of opinion that such a set of facts does not constitute desertion.

In Sturgeon on Divorce (3d ed.), sec. 399, quoting from page 235, it is said:

"Desertion is defined by the Supreme Court of Pennsylvania to be, 'where either party shall have committed wilful and malicious desertion, and absence from the habitation of the other, without reasonable cause, for and during the space and term of two years'. . . .

"The desertion contemplated by the Act of Assembly is an actual abandonment of the matrimonial cohabitation with an intent to desert, wilfully and maliciously persisted in, without reasonable cause for two years".

Yet in the instant case we have had no cohabitation. We are somewhat at a loss to understand how there could be an abandonment of matrimonial cohabitation when there never was any cohabitation.

In the same work referred to above, quoting from page 237, it is said in section 402:

"To justify a decree of divorce on the ground of desertion there must be a *clear intention to desert*, wilfully and maliciously persisted in, without cause, for two years. Mere separation is not desertion. . . .

"The intention to desert must accompany the fact of separation . . .

"Mere separation is not necessarily 'desertion' which will entitle injured spouse to divorce".

The members of this bar seem to be unable to distinguish between separation and desertion, and between nonsupport and desertion.

One of the leading cases on this subject is the case of Ingersoll v. Ingersoll, 49 Pa. 249, where it is said in a per curiam opinion, quoting from page 251:

"The neglect of the husband to provide for his wife, as he was bound to do, and his acquiescence in her leaving him to seek from her kinsfolk the support which he owed her, are fully established in the proofs, but evidence is wholly wanting of that 'wilful and malicious desertion and absence from the habitation of the wife, without a reasonable cause for and during the term and space of two years,' which is necessary under our statute to support her libel for a divorce.

"Separation is not desertion. Desertion is an actual abandonment of matrimonial cohabitation, with an intent to desert, wilfully and maliciously persisted in, without cause, for two years."

The learned master in this case cites no authorities for his position or to substantiate his reason for recommending a decree, but we call the attention of the learned master and counsel to the opinion of Hon. Alexander D. McConnell, late president judge of this court, in the case of Ferree v. Ferree, 19 Pa. C. C. 67, where that eminent jurist says, quoting from page 69:

"We might safely conclude from this that he was absent from home, and had not furnished support during the period of his absence; but what is there to justify the conclusion that there is an intent to desert wilfully and maliciously persisted in without cause? Under what circumstances did he leave home? Why did he disappear? Is he able to furnish support? For aught that appears he may be sick in a hospital or an asylum. If so, there is no desertion: Neely v. Neely, 131 Pa. 552. He may be unable to support his wife. This will not constitute desertion: Ingersoll v. Ingersoll, 49 Pa. 249. He may have been crowded out of his home. If so, his absence will not be desertion: Graham v. Graham, 153 Pa. 450.

" 'A divorce will not be granted on the ground of desertion when the facts and circumstances are not so testified to that the court can determine whether they constitute wilful and malicious desertion. It is not sufficient for the

libellant merely to testify that her husband has deserted her:' Detrick v. Detrick, 6 Kulp, 164."

We also call the attention of counsel and the master to another recognized authority, where Judge King, in delivering the opinion in the case of Butler v. Butler, 1 Pars. Eq. 329, said (p. 335) :

"The malice of the desertion arises from its being the perverse act of the one, in refusing the performance of the matrimonial obligations and duties, which the other has the legal right to require. But when such separation has been the result of mutual arrangements, and these clearly established in proof, then each are in equal fault in this particular, and neither can claim a legal right against the other, in consequence of an act in which he or she has been an equal participant. Such assent or acquiescence, however, are revocable acts."

In Browne on Divorce (1890), quoting from page 144, it is said:

"The mere fact that parties are living apart does not raise a presumption of desertion. Desertion begins with the intent to desert, and to make such desertion permanent. Wilful desertion signifies intentional desertion. It does not imply malice in fact. A mutual agreement to separate is not desertion."

In the same work, quoting from page 159, it is said:

"Separation by mutual consent is not desertion, and if the petition filed admits such unopposed withdrawal, the libellant is estopped by such averment. This consent need not be expressed, but may be inferred from the conduct of the parties. The undisclosed feelings and desire of the party deserted do not affect his right."

To the same effect are the cases of Pearce v. Pearce, 53 Pa. Superior Ct. 129, Lane v. Lane, 81 Pa. Superior Ct. 494, and Knipe v. Knipe, 84 Pa. Superior Ct. 451.

In the case of Lamon v. Lamon, 22 Westm. 268, in an opinion handed down on April 11, 1940, we said:

"We had hoped that by the recent adoption of a rule of court providing that the Master's fees should be paid into

the Prothonotary's office before the appointment of a master all temptation to recommend the granting of a decree in divorce, unless sufficient cause was shown, would be removed and that the master so appointed would have some regard for the evidence, and make a report or return to the Court in accordance therewith.

"Such does not seem to have been the case in the matter now under consideration. The Master appointed in this matter after hearing the testimony has in addition to his sixteen findings of fact submitted a four and one-half page opinion in which he attempts to cite some authorities for his position. However, none of the authorities are in point. . . . We would ordinarily and perhaps should, therefore, refuse the decree, but we take this opportunity of announcing to the bar of this county that unless libellants can present a cause for divorce, which is recognized by the laws of this Commonwealth, decrees should be refused. In fact members of the bar should not present libels or ask for the appointment of a master unless the libellant has a cause for divorce recognized by the laws of this State.

"Hereafter any case coming to our bench, wherein the cause is not recognized by the laws of this Commonwealth, will be summarily refused."

Because that statement has been made so recently and because notice of it may not as yet have had time to reach the members of the bar, we will not in this instance carry the expressed purpose into effect, but we warn the members of the bar that if the heretofore loose practice of recommending decrees regardless of the rights of the parties to such actions under the law is continued, the court will be compelled out of respect and regard for decency, propriety, and the fulfillment of the divorce laws to refuse the appointment of masters and hear divorce cases itself. We trust this warning will be sufficient and that it will not be necessary to take any such drastic action in matters of this kind.

For this reason and because libellant may have a cause for divorce, which has not been proven, we will refer the matter back to the master for the purpose of taking any further or additional testimony libellant may see fit to offer.

And now, to wit, April 19, 1940, after due and careful consideration, it is ordered, adjudged, and decreed that this matter be and the same hereby is referred back to the master for the taking of any additional testimony libellant may care to offer in accordance with our opinion in this case.