Rufus L. Sharp *v.* Elizabeth Sharp, Appellant.

Argued April 20, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Dean D. Sturgis,* for appellant.

*Joseph W. Ray, Jr.,* of *Shelby, Hackney & Ray,* for appellee.

OPINION BY CUNNINGHAM, J., July 14, 1932:

On November 13, 1930, Rufus L. Sharp, claiming to be the "injured and innocent spouse," filed a libel in divorce, under paragraphs (e) and (f) Section 10 of "The Divorce Law" of May 2, 1929, P. L. 1237, against his wife, Elizabeth Sharp, upon the grounds that she had, "by cruel and barbarous treatment, endangered [his] life" and had also "offered such indignities to [his] person ....... as to render his condition intolerable and life burdensome."

Respondent appeared and filed an answer denying libellant's averments and containing certain counter-charges; neither party demanded a jury trial and the case was referred to a master who took the testimony, made findings of fact and stated conclusions of law, and expressed the opinion that libellant is the injured and innocent spouse and had sustained both grounds. The court below, in banc, heard argument upon the exceptions to the master's report, reviewed the evidence, and granted libellant a divorce from "bond of matrimony" upon the ground of "indignities." The concluding paragraph of the opinion supporting the

decree reads: "We are fully satisfied that the wife offered such indignities to the person of her husband as to render his condition intolerable and life burdensome. We are also satisfied that the libellant was the injured and innocent spouse." This appeal is by the wife from the decree granting her husband an absolute divorce.

As there was no jury trial, we, as required, have considered all the evidence and our independent conclusion thereon is in accord with that of the court below. The evidence was not sufficient to sustain the charge of cruel and barbarous treatment, which, under paragraph (e), implies a merciless and savage disposition leading to conduct amounting to actual personal violence, or creating a reasonable apprehension thereof—such a course of treatment as renders further cohabitation dangerous to physical safety.

Indignities to the person, as specified in paragraph (f), constitute a separate and distinct ground for divorce; they need not be such as to endanger life. It has been repeatedly stated that "it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. It has been held by many courts (see 14 Cyc. 623) that they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient."

Before affirming a decree awarding a divorce upon the ground of indignities to the person, we must be convinced from the credible testimony that the application has been made in sincerity and truth and that the respondent has been guilty of such a course of conduct as is humiliating, degrading and inconsistent with the libellant's position and relation—conduct

growing out of and inspired by an insulting and contemptuous purpose and intent. The term signifies something short of such violence as endangers life but amounts to a course of conduct rendering the condition of the innocent spouse intolerable and life burdensome.

The parties were married in 1915 and lived together until October 10, 1930, when libellant withdrew from the common home, owned by him at Fairchance, Fayette County, leaving respondent and their two sons—aged sixteen and fourteen years—in possession thereof. As remarked by the master, the marriage has been an unhappy one almost from the beginning and the boys have been obliged, during their entire lives, to witness frequent quarrels between their parents.

A detailed discussion of the evidence is neither necessary nor desirable. Its perusal leaves the impression that there have been faults on both sides; during their quarrels both parents have indulged, sometimes in the hearing of their children, in the use of shocking profanity and gross vulgarities and obscenities; libellant frankly admits that he occasionally used improper language in addressing respondent. Respondent has denied many incidents testified to by libellant, and, in her answer, averred the separation had been "occasioned by libellant's relationship and interest with women other than the respondent." This charge was not supported by any convincing evidence. In view of the conflicting testimony of the parties, the matter of corroboration becomes important; speaking generally, we may say that in many instances libellant's testimony is corroborated by servants and other persons employed, from time to time, in the home, attending physicians, neighbors and other apparently disinterested witnesses, while the corroboration of respondent comes largely from relatives and interested witnesses,

Libellant is engaged in the undertaking business, has a fair income from it, and, on the whole, seems to have endeavored to provide with reasonable liberality for respondent and has been generous in the maintenance and education of the children. In explanation of respondent's apparently gross neglect of the comfort and welfare of the family, her real, or imagined, ill health has been advanced. The evidence indicates libellant made every reasonable effort to secure competent medical attendance, employed a number of physicians, and sent respondent to different hospitals and sanitariums.

Specific incidents of indignities, appearing from the testimony, were that respondent accused libellant of infidelity—a matter to which we have already referred —and, without justification, charged that he had contracted a venereal disease; that respondent, without provocation, threw a knife, candlestick and a sugar bowl, at libellant, upon specified occasions, struck him with a potato masher and slapped him on the face. In a number of these instances libellant's testimony was corroborated by disinterested witnesses. The testimony indicates that respondent is afflicted with a nagging, suspicious and jealous disposition, has no interest in the welfare of libellant and has subjected him to unmerited reproach, studied neglect, intentional incivility, abusive language, and, in general, pursued for years a course of conduct intended to humiliate and degrade him. In reply to a question by the master asking respondent whether it is ''a fact that conditions are and have been such as make it impossible for [the parties] to live together as man and wife,'' she replied ''I wouldn't live with him.''

Upon consideration of the entire record, we agree with the court below that this is a case in which the husband was justified in resorting to the courts to sever a relation no longer endurable. In Koontz v.

Koontz, 97 Pa. Superior Ct. 70, we considered the principles of law applicable to the situation existing in this case; further discussion is unnecessary.

Decree affirmed.