## Paswaters v. Paswaters

*Moss & Moss*, for libellant; *Henry Walnut*, for respondent.

LEWIS, J., November 10, 1933.—The master herein recommended that a divorce be granted libellant on the ground of indignities to the person. Respondent filed many exceptions, but it is clear that there was sufficient evidence to support the master's findings and recommendation if deemed credible. Counsel

raised the question whether the libellant was "an innocent and injured spouse" within the meaning of The Divorce Law of May 2, 1929, P. L. 1237.

The testimony heard by the master covers almost 1400 typewritten pages, and respondent contends that this massive record discloses such evidence of gross indecency on the part of libellant as to bar him from relief in a court of equity, notwithstanding the ample proof of respondent's mistreatment of him.

Libellant is 45 years of age and respondent something over 40 years of age. Libellant was formerly assistant to the eastern vice president of Sears Roebuck & Company, and latterly has been Philadelphia district manager for that corporation. The parties were married on February 16, 1927, following an adulterous companionship which was made the basis of a successful divorce action against each of them by a former spouse. They had become infatuated with one another, as the master finds, and traveled to Bermuda together notwithstanding the existing marriage bond on the part of each.

The master also found, on convincing evidence, that respondent was an extremely emotional, passionate woman of most violent and abusive temper and disposition; that she was evidently "fond" of libellant, but manifested toward him during the 3 years and more of their life together such a course of revolting and profane abuse, traduction, and public humiliation as would seem to justify severance of any human relationship. The evidence, however, likewise discloses that libellant participated with respondent in gross sexual perversion, and that libellant at no time made any serious effort to bring about a discontinuance of these unnatural practices, although he disclaimed responsibility for the habit, laying the blame for its beginning and persistence upon the wife.

For the husband it is urged that some explanation is found for the abnormal phase of the married life of the parties in respondent's excessively amorous nature and her apparent insatiable desire for passionate indulgence.

As we have said, respondent's defense, as presented to us by her counsel, was in part one of recrimination growing out of the above-recited facts. The general rule as to this defense is stated in 19 C. J. 94, to be that "the misconduct of which complainant is guilty must be such as in itself to afford defendant ground for divorce"; and that the misconduct must also have been committed knowingly and without connivance of the other party, and without justification or excuse. Again, at page 95, it is stated: "The general rule, however, is that the offense pleaded in recrimination need not be of the same nature as the offense which defendant has committed, but any misconduct on the part of complainant which constitutes ground for divorce bars his suit without reference to the nature of the offense of which he complains."

It is also a rule of most general application that divorce is a remedy for the innocent against the guilty, and hence if both parties are guilty a divorce will not be granted: 19 C. J. 93.

Pennsylvania statutes authorizing divorce have long contained the phrase "innocent and injured spouse", but very few of our court decisions have made reference to the apparent restriction of the right of divorce to those libellants who could bring themselves within such a classification. We do have quite recent decisions, however, which indicate very clearly that in Pennsylvania divorce is not restricted to those complainants who are utterly without fault: Koontz v. Koontz, 97 Pa. Superior Ct. 70; Sharp v. Sharp, 106 Pa. Superior Ct. 33.

In the first of these cases, the lower court entered a decree of absolute divorce in favor of the husband and against the wife on the ground of indignities to the husband's person. On appeal the decree was affirmed. Judge Cunning-

ham's opinion, for the Superior Court, cited with approval this quotation from Breene v. Breene, 76 Pa. Superior Ct. 568, 572:

"It is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. It has been held by many courts (see 14 Cyc. 625) that they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient."

Judge Cunningham concludes the Superior Court's opinion with these words (p. 78):

"A perusal of the testimony leaves the impression that there were serious faults on both sides; it is not easy to apportion justly the blame for the wrecking beyond repair of this marriage, but we agree with the court below that the appellee was justified, in the language of Breene v. Breene, supra, in resorting to the courts 'to sever a relation no longer endurable.'"

In the second cited case, Sharp v. Sharp, supra, the husband was likewise the libellant and sought a divorce on the grounds of cruel and barbarous treatment and indignities to his person. The master found that libellant was the injured and innocent spouse and had sustained his case on both grounds. The court below, in banc, heard argument upon exceptions, reviewed the evidence, and granted libellant a divorce on the ground of indignities only. The last paragraph of the lower court's opinion reads: "We are fully satisfied that the wife offered such indignities to the person of her husband as to render his condition intolerable and life burdensome. We are also satisfied that the libellant was the injured and innocent spouse." On appeal to the Superior Court, Judge Cunningham again wrote the opinion and also quoted with approval the above language from Breene v. Breene. Judge Cunningham continued:

"Before affirming a decree awarding a divorce upon the ground of indignities to the person, we must be convinced from the credible testimony that the application has been made in sincerity and truth and that the respondent has been guilty of such a course of conduct as is humiliating, degrading and inconsistent with the libellant's position and relation—conduct growing out of and inspired by an insulting and contemptuous purpose and intent. The term signifies something short of such violence as endangers life but amounts to a course of conduct rendering the condition of the innocent spouse intolerable and life burdensome.

". . . As remarked by the master, the marriage has been an unhappy one almost from the beginning and the [children of the couple] boys have been obliged, during their entire lives, to witness frequent quarrels between their parents.

"A detailed discussion of the evidence is neither necessary nor desirable. Its perusal leaves the impression that there have been faults on both sides; during their quarrels both parents have indulged, sometimes in the hearing of their children, in the use of shocking profanity and gross vulgarities and obscenities; libellant frankly admits that he occasionally used improper language in addressing respondent. . . .

". . . The testimony indicates that respondent is afflicted with a nagging, suspicious and jealous disposition, has no interest in the welfare of libellant and has subjected him to unmerited reproach, studied neglect, intentional incivility, abusive language, and, in general, pursued for years a course of conduct intended to humiliate and degrade him. . . .

"Upon consideration of the entire record, we agree with the court below that

this is a case in which the husband was justified in resorting to the courts to sever a relation no longer endurable."

Much of the foregoing language could be applied to the case before us. We have adopted the master's findings and conclusions as our own, and hence find that libellant was the victim of a wife whose conduct can be condemned in even more severe lanuage. Her violence of temper and her uncontrolled vulgarity inflicted upon the libellant herein such a quantity and quality of public abuse, reproach, incivility, and humiliation as is scarcely credible as coming from a woman. There are such termagants, however, as lawyers and peace officers are especially able to know.

The libellant has not been without fault, both in respect of his conduct with his present wife before marriage and in his apparently quite willing participation with her in low immorality during their married life together. However, the foregoing decisions demonstrate that with us in Pennsylvania there is in a divorce proceeding a weighing or balancing of fault and offense, and that where the delinquency is more largely upon the part of respondent, some concurrent bad conduct by libellant falling short of being sufficient cause for divorce will not bar a decree in his or her favor.

Libellant's moral delinquencies were not such as to give to the wife who participated with him therein ground for divorce, and the defense of recrimination therefore fails.

For which reasons we dismiss the exceptions. Let final rule issue.