Lacey v. Lacey, Appellant.

388

Argued November 13, 1933.

Before TREXLER, P. J., KELLER, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*Joseph R. Dickinson,* and with him *Lee Friday,* for appellant.

*John B. Stevens,* and with him *Harry W. Lee* of *Stevens & Lee,* and *Earle I. Koch,* for appellee.

OPINION BY TREXLER, P. J., February 1, 1934:

John B. Lacey filed his petition for divorce from his wife, Catharine E. B. Lacey, alleging cruel and barbarous treatment and indignities to the person. The master recommended a divorce on the ground of indignities and the court granted it. The respondent has appealed.

It appears that the wife had on occasion before 1929 and frequently thereafter scolded, insulted and assaulted her husband without provocation. The parties lived together for over twenty-five years and raised a family. The libellant testified that his wife called him vile names; made fun of his deafness; continuously accused him of going with other women; said that he had a bad disease and other women were afraid to sit down where he was; threatened to blow out his brains; threw a can of water over him; continuously quarreled with him at meal times; threw a sugar bowl at him; took his clothing off the hangers and threw it on a pile on the floor; kicked him on the shins; struck him on the head; tore a newspaper out of his hands while reading and threw it in his face, and knocked his glasses off his nose, and manifested a determination to harass and torment him.

These events are said to have occurred since October 1929, but there was also testimony that the accusations of unfaithfulness and the use of abusive terms had taken place before that time.

The respondent contradicted him and if that were all that were in the case, we would dismiss the libel, but we think the master and the court were right in giving credence to the libellant's narrative, not only because he was in some parts corroborated by the daughters, but because of the inherent quality of re-

spondent's testimony which showed a recklessness of statement and an animosity against her husband which stopped apparently at nothing.

The opinion of the master which we quote refers to a significant occurrence at the hearing:

"In the opinion of your master, the firm denials of the respondent of all the testimony offered by libellant and his witnesses, cannot be accepted without hesitancy. The inferences adduced in respondent's cross-examination of libellant and his younger daughter, in a futile effort to prove improper conduct between them, cannot be condoned. Respondent during the course of the first hearing abruptly interrupted a witness of libellant to volunteer a remark that she frequently saw libellant with his legs wrapped about the daughter, Emily, when they were both thinly attired in night clothes. Upon the production of her own case, she carefully refrained from any attempt to substantiate any of the inferences she raised in the cross-examination of libellant and the daughter. Upon her cross-examination, however, she was asked whether she was accusing Emily of anything wrong, and replied in the negative. It is difficult to conceive what other impression could be drawn from her statements, and your master feels that they were made for the purpose of having him draw a malicious inference, which he refuses to do. False charges of this sort have in themselves been held sufficient grounds for divorce in Cavazza v. Cavazza, 102 Pa. Superior Ct. 312, and had the libel in the instant case charged respondent with same, the master would have no hesitancy in recommending a decree of divorce to libellant. In any event, the master was not impressed by respondent's conduct in this respect and her attitude in this matter reacted unfavorably in believing much of her other testimony."

Two of the daughters testified to physical violence on her part. As stated before, the daughters corrobo-

rated their father. The vile terms applied to the husband were heard by both daughters who testified to the truth of his assertion in this respect and also the continued accusations that the libellant was going with other women. The course of conduct of this woman to her daughters alienated them and the oldest daughter left their home for reasons which apparently were justified.

In Sharp v. Sharp, 106 Pa. Superior Ct. 33, 161 A. 453, the facts were strikingly similar to those before us and the comment of our Brother CUNNINGHAM may well be applied to the present situation.

"Specific incidents of indignities, appearing from the testimony, were that respondent accused libellant of infidelity, a matter to which we have already referred, and, without justification, charged that he had contracted a venereal disease; that respondent, without provocation, threw a knife, candlestick, and a sugar bowl at libellant, upon specified occasions, struck him with a potato masher, and slapped him on the face. In a number of these instances libellant's testimony was corroborated by disinterested witnesses. The testimony indicates that respondent is afflicted with a nagging, suspicious, and jealous disposition, has no interest in the welfare of libellant, and has subjected him to unmerited reproach, studied neglect, intentional incivility, abusive language, and, in general, pursued for many years a course of conduct intended to humiliate and degrade him."

In the present case, a careful review of the testimony leads us to the conclusion that this respondent offered such indignities to her husband as necessarily rendered his condition intolerable and life burdensome.

The decree is affirmed, the appellant to pay the costs.