Kett, Appellant, *v.* Kett.

Kett *v.* Kett, Appellant.

Argued December 13, 1934.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD and PARKER, JJ.

*Frank J. Strassner, Jr.,* and with him *Edward J. Kirchner,* of *Kirchner, Mitchell & White,* for appellant.

*William T. Connor,* and with him *John R. K. Scott,* for appellee.

OPINION BY PARKER, J., March 13, 1935:

Grace Adele Kett, on June 19, 1930, filed a libel in divorce charging her husband, Russell C. Kett, with cruel and barbarous treatment and indignities, and on March 14, 1933, the husband filed a libel charging the wife with wilful and malicious desertion. The cases were consolidated and tried together. The master who heard the testimony recommended that a decree in divorce be entered for the husband and that the wife's petition be refused. The court of common pleas reversed the findings of the master and directed a decree to be entered for the wife on the grounds of cruel and barbarous treatment and indignities and dismissed the libel of the husband. The husband has appealed in each case. There was an irregularity in entering the decree, the effect of which both sides waived at bar.

We have reviewed the evidence, as we are required to do where there has been no jury trial, for the purpose of determining whether it sustained the complaints in the libels and are of the opinion that the decree in favor of the wife should be affirmed, on the ground that the husband offered such indignities to the person of the wife as to render her condition intolerable and her life burdensome. "It has been repeatedly stated that 'it is impossible to lay down a general rule for the determination of what indignities render the condition of the injured party intolerable. It has been held by many courts (see 14 Cyc. 623) that they may consist of vulgarity, unmerited reproach, habitual contumely, studied neglect, intentional incivil-

ity, manifest disdain, abusive language, malignant ridicule, and every other plain manifestation of settled hate and estrangement; but slight or irregular acts of misconduct are not sufficient' ": Sharp v. Sharp, 106 Pa. Superior Ct. 33, 35, 161 A. 453.

The parties were married on October 5, 1927, and shortly thereafter took up housekeeping in a home purchased by the husband, and continued to live in the same place until their separation on January 21, 1931. For approximately one year before the separation, they occupied separate bedrooms and the husband took his meals much of the time away from home. The wife's mother lived with the parties during most of the time that they occupied their home and a sister of the wife made her home with them for a short time. Friction arose between the parties within a few months after their marriage and continued until the separation.

The wife, to sustain her libel, depended upon her own testimony corroborated in part by her mother. The husband relied alone upon his own testimony to answer the wife's charges and sustain his claim to a decree on the ground of desertion, with the exception that his father testified that after the alleged desertion the husband had made his home with him.

The wife testified that her husband struck her on a number of different occasions and to other indignities, the substance of such testimony being as follows: In February, 1928, he slapped her on the mouth so that her teeth cut her lips, and at about that time stood on the music rack of a new piano and, when the wife remonstrated, choked her until she became dizzy, bent her back over a table, and shook her. In the fall of the same year, an altercation arose over a trivial matter and he struck her on the head with his hand, seized a hammer and raised it to strike her when a guest in the house pulled him away. In December, 1928, an

altercation arose over money and he threw a bank book at her, cutting her over the eye. In December, 1929, when she asked for some money to pay household bills, another altercation arose and she started to cry when he said: "I will give you something to cry about." He then seized her, pushed her from the room, and cut her wrist. At another time he raised a rake to strike her and his brother and another guest interfered. She also testified that he referred to her in the presence of others as a half-wit, a liar, a human sponge, said that he did not love her, wished she would leave the house, and she "had no guts." The parties maintained a bungalow on the outskirts of Philadelphia and made frequent trips with friends to that resort. On these occasions he showed a total indifference and disrespect for his wife and spent most of his time canoeing and in other pastimes with a married woman who accompanied them, comparing his wife unfavorably with the married woman. He spent most of his evenings away from home and, when she remonstrated and inquired where he was going, informed her that it was not any of her business. We quote from the record of her testimony as follows: "He was going out one night and I asked him to stay at home. He didn't say anything at first and then I insisted on knowing where he was going and he said, 'Well, if you must know, I am going out with Elsie Knecht.' That was the girl he was going with before he married me. We were married about four months and it was cold one day and I asked him to go down and put some coal on the fire. We were pretty low on coal anyhow. He said he would not touch the fire and we could freeze for all he cared. Then he put on his hat and went out of the house. That same month ...... I asked him where he was going and he said, 'None of your business.' He came over and smacked me in the face and walked out."

When the parties were married the wife weighed 112 pounds, but while she lived with her husband her weight dropped to 93 pounds. The wife was corroborated by the testimony of her mother, Marion Rodgers, as to a number of the cases of physical abuse and the attendant circumstances. The husband denied most of the testimony of his wife, but did admit that he had struck her. He attributed their trouble in part to the presence of a sister in their home, but it would appear from the testimony that the sister was only in their home a portion of the time. The parties did separate on January 21, 1931, the husband alleging that her leaving was without notice and without cause. The following testimony of the husband with relation to an occurrence the night before the separation is significant: "It was the night before. She was out walking with the dog and she stopped me on the street and threw her arms around me. She threw her arms around me and attempted to kiss me."

Without referring to various other items of testimony, we are impressed with the fact that the conduct of the husband was one of continued indignities indicating an indifference toward his wife, manifest disdain, incivility, settled hate, and a desire to promote rather than prevent an estrangement.

A decree may be supported by the testimony of the complainant alone, but if this testimony be contradicted and shaken by the respondent and there be no convincing circumstances warranting a disregard of the contradictory evidence, a case has not been made out: Reinhardt v. Reinhardt, 111 Pa. Superior Ct. 191, 169 A. 408. We agree with the court below that the testimony of the wife was not seriously shaken by that of the respondent but that, on the other hand, his own admissions and the character of many of his answers tended to lend credence to the statements of the wife. There was strong corroboration as to a few of the

items charged by the testimony of the wife's mother. In addition, the wife testified to events which occurred in the presence of members of his family and his friends and these parties were not called to contradict her testimony.

As has frequently been said in divorce cases, the facts as detailed in opinions are frequently insufficient to make those cases precedents that are of assistance in deciding another case. Many of the cases to which counsel for the husband have referred differed from this one in that, while they showed numerous quarrels that at times even resulted in physical violence, they were interspersed with periods of domestic harmony and peace so that they did not disclose a continued course of indignities. Here the evidence was persuasive that the husband was actuated by a fixed hostility toward his wife, and there is very little testimony upon the part of the husband himself indicating any love or consideration for his wife. We are all of the opinion that the evidence was sufficient to support a decree on the ground that the husband offered such indignities to the wife as to render her condition intolerable and her life a burden.

In view of the conclusions at which we have arrived, it is unnecessary to analyze the testimony in support of the charge upon the part of the husband that his wife deserted him, for if his conduct was such as to justify the granting of a divorce to her on the grounds indicated, the separation was not a wilful and malicious desertion by her. Aside from that fact, we agree with the conclusion of the court below that the testimony on behalf of the husband came far short of making out a case of wilful and malicious desertion.

The decree of the court awarding a divorce to Grace Adele Kett is affirmed, and the order of the court dismissing the libel of Russell C. Kett is affirmed at costs of appellant.