Brown v. Brown, Appellant.
Brown, Appellant, v. Brown

Argued October 8, 1936.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

238

*James Yearsley,* for appellant.

*Ralph S. Croskey,* for appellee.

OPINION BY PARKER, J., December 11, 1936:

Kenneth O. Brown brought an action for absolute divorce against his wife, Helen R. Brown, on June 26, 1934, alleging as a ground for a decree that she had offered such indignities to his person as to render his condition intolerable and life burdensome. On November 22, 1934 the wife started an action praying for a divorce *a mensa et thoro,* alleging as grounds desertion, cruel and barbarous treatment and indignities to the person. Both cases were referred to the same master, a member of the Philadelphia bar. After many hearings and the receiving of a large amount of evidence the master made an exhaustive report, which displayed patience, care and close adherence to legal principle, recommending that the prayer of the husband be granted and the libel of the wife dismissed. Three judges sitting in the court of common pleas approved the report of the master, entered a decree for the husband and dismissed the wife's libel. By stipulation the evidence taken in the first case was considered as evidence in the second case. The two cases were argued together and will be disposed of in one opinion.

We have reviewed the testimony carefully; reading all of the voluminous record and scrutinizing the evi-

dence as we are required to do, and we are of the opinion that every fact, essential to the right of the husband to decrees in his favor has been made out by clear and satisfactory proofs.

As the burden was on the husband to establish his right to a decree and if he is entitled to a decree the wife's libel must be dismissed, we will first consider the action brought by him. The parties were married in October, 1933 and separated in May, 1934, after living together for less than seven months in a two room apartment in Philadelphia. The husband, about thirty-one years of age, was a stillman in the employ of a large oil company, earning about $1700 a year. He worked eight hours each day, but his hours of labor shifted each two days so that he successively began work at 12 A. M., 8 A. M. and 4 P. M. The wife, about thirty-nine years of age at the time of the marriage, had been a commercial artist, but does not appear to have made a financial success of her work. The husband was phlegmatic and the wife neurotic. We do not propose in this opinion to analyze the testimony in detail as that has been done by the master. The immediate parties are familiar with the evidence and as there are no new or difficult legal questions involved, the bar and the public would not profit from a consideration of details. Suffice it to say that the testimony of the husband tended to show that his wife unreasonably objected to him continuing his service in the National Guard of Pennsylvania and took active steps to prevent him from performing the obligation of his position in that organization although he expressed a willingness to resign at the end of the term of his enlistment. She attacked him with a clothes tree, breaking it over him, threw a quantity of urine upon him, and at different times threw at him a bag of coke, a dish, a bag of garbage, and a wash basin, struck him with a broom handle and threatened to kill him. She caused violent scenes

in public and private in such a manner as to cause him embarrassment on the streets and in his employment. She screamed and cried so as to prevent him from sleeping, and applied vile epithets to him. At other times she threw at him a glass of water, an oil can and a wooden box. If we accept the testimony of the husband these actions were not occasional acts, but constituted a continuous course of conduct such as to render the husband's condition intolerable and life burdensome, and improper conduct on his part did not provoke her outbursts.

If we accept the testimony of the wife, he neglected her for the National Guard and the company of his sister. He used vile epithets to her, struck her and threw her to the ground, and asserted on one occasion that her mother was crazy. Each made formal denial of the main charges of the other with some admissions of objectionable language on the part of each.

The corroborative proofs of third parties decidedly favored the husband. In addition, the admissions of the wife were damaging to her case. We will cite one instance which is typical. She was being examined as to her screaming and crying when she testified: "Sometimes I would cry in a low key and sometimes I would cry in a high key, and sometimes I cried for five minutes and sometimes I tried to see if I could cry an hour. Q. Did you ever succeed in crying an hour? A. No. My cat stopped me. He came up and made me stop." In addition she added considerable corroboration to her husband's contention by her demeanor and conduct at the hearings before the master which he thus describes: "In the opinion of the Master, the respondent is a highly neurotic woman. She was given to violent outbursts of uncontrollable temper and actions which were exhibited on frequent occasions before the Master, during the taking of testimony at the sixteen meetings. At these times she could not be controlled either by the

Master or by her father (her attorney)." The husband positively denied any physical abuse of his wife and he asserted that he only used such force as was necessary to restrain her from injuring him. He does admit that when provoked on at least two occasions he applied a vile epithet to her. The wife also admitted that she had used bad language to her husband.

We are of the same opinion as the master and the court below in concluding that in the main the evidence of the husband should be accepted, that the conduct of the wife consisted of "unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, and other plain manifestations of settled hate and estrangement." This constituted a course of conduct and not having been provoked by the husband constituted indignities as that phrase is used in the Divorce Act: *Sharp v. Sharp,* 106 Pa. Superior Ct. 33, 35, 161 A. 453; *Kett v. Kett,* 117 Pa. Superior Ct. 236, 177 A. 509. After reading all of the testimony we are unable to see how it would be possible to come to a different conclusion. We do not labor under the delusion that the husband was a paragon in respect to his conduct, but place the responsibility for the violent disagreements on the shoulders of the wife. The conduct of the wife, in preventing her husband from sleeping after hard days at labor and when he was compelled to seek rest at irregular hours, and her constant nagging must have had a serious effect upon him.

After the counter suit was brought the court below directed the two cases to be consolidated, but subsequently revoked his order. No harm was done the appellant in either case by these orders. By mutual stipulation the evidence in the one case was received as evidence in the other, the effect of which was the same as if they had been consolidated. The court below did not abuse its discretion.

We find no merit in the complaint of the wife as to a ruling with relation to the consideration of a diary kept for a short time by the husband. Any consideration that was given to this diary was of benefit to the appellant and she was not harmed thereby. The master declined to permit the husband to testify from the diary. If properly proved, it would have been proper for the witness to have used it to refresh his memory. However, an examination of the report shows that if the diary was considered, it tended to prove only that the husband made a mistake in the chronological order in which he detailed certain occurrences and slight inaccuracies in the dates when particular altercations arose.

The responsibility for the unnecessary length of the testimony is chargeable to counsel for the wife. The record is teeming with irrelevant and immaterial questions asked upon cross examination.

We have examined all of the assignments of error and find no merit in them.

The conclusion at which we have arrived is controlling against the wife in her appeal from the dismissal of her libel.

The decree in each case is affirmed at the cost of the appellant.

---

## SUPPLEMENTAL OPINION

PER CURIAM, January 29, 1937:

The appellant has requested us to file a supplemental opinion. We did not make special reference in our opinion to the error of the master in his conclusion that the libellant was entitled to a divorce on the ground of cruel and barbarous treatment as well as indignities to the person, overlooking that the libel was confined to the charge of indignities to the person,

for the reason that his recommendation was that the divorce be granted "pursuant to the prayer of the libel" and the decree of the lower court was based on the charge that the respondent, Helen R. Brown, had offered such indignities to the person of the libellant as to render his condition intolerable and life burdensome. That there may be no misunderstanding we now hold that the husband was entitled to a divorce upon the ground alleged in the libel, to wit, indignities to the person, and not because of cruel and barbarous treatment.