## Freeman *v.* Freeman, Appellant.

Argued May 6, 1937.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES and RHODES, JJ.

558

*John M. Reed,* for appellant.

*Louis Caplan,* of *Sachs & Caplan,* for appellee.

OPINION BY STADTFELD, J., July 15, 1937:

This is a libel for divorce by the husband against the wife, alleging two grounds: (a) that respondent "has by cruel and barbarous treatment endangered the libellant's life; (b) has offered such indignities to the person of the libellant as to render his condition intolerable and life burdensome."

A bill of particulars was filed, setting forth numerous instances of an uncontrollable violent temper during which respondent would throw overshoes, books and dirty dish-water at him, strike him with her fists, hit him with the flat part of a pressing iron and rain blows on him without provocation; in many instances she would pound her fists on the foot of the bed, tear her hair; on several occasions she threatened to commit suicide; on one occasion she struck their son, Keith, then only three or four years of age, with a bread board having a sharp edge and necessitating a doctor's care; on another occasion, in an outburst of temper, she picked up a pair of scissors and threw them at Oliver, another son, who at the time was four years of age, inflicting a bad cut on the child's leg; that she constantly disturbed and harassed libellant at night, disturbing his sleep and necessitating his sleeping in another room; that she frequently used vile and profane language and called libellant opprobrious names, telling him "You didn't have to marry me," "get a divorce if you want to," "God damn son of a fool, I hate you;" that this course of conduct was continuous from and after the first year of their marriage.

An answer was filed by respondent, denying the various charges set forth in the bill of particulars.

The case was heard in open court before MUSMANNO, J. Libellant was the only witness on his own behalf and testified in support of the various charges alleged by him.

The parties were married in 1914, libellant at the time being twenty-two years of age and the respondent twenty-one. There were four children born as a result of the marriage, aged at the time of the hearing twenty, nineteen, thirteen and eleven years, respectively. Libellant left the respondent on November 15, 1934, because of the alleged treatment by respondent affecting his physical and mental health. As indicative of her actions on numerous occasions, libellant testified that on a particular evening "we went to bed and immediately the light was turned out she snapped on the light again and went into a frenzy of temper that is only comparable to the first incident I related in our married life. She got on her knees in bed, pounded the walls with her two fists, jumped out of bed, threw herself on the floor on her hands and knees, and then gritted her teeth, immediately jumped back into bed again and threshed around violently and hit me on the chest ......I would ask her to be quiet, indicating and telling her I needed rest, must have it. I mean she would wake me up — one particular occasion when she continued until five o'clock in the morning. Another time she woke me up at four o'clock approximately and I could not get to sleep again until after seven." It would be to no purpose to recite in detail the various incidents to which libellant testified, as they all tend to support the charges indicated.

The credibility of witnesses is not involved in this case. Although the respondent in her answer denied practically all of appellee's allegations, she did not make any denial in her testimony, but in fact confirmed appellee's statements.

There is not the slightest pretense on the part of the

present appellant that the appellee was in any way to blame for appellant's conduct. In fact, she testifies to the very contrary — the appellee was "just lovely," he was attentive to the appellant and their children, he was "very kind and considerate" to appellant, he was "a very patient man."

Although appellant attempted to justify her conduct on the ground of her physical condition, there is no evidence of frequent or continuous medical treatment necessitated thereby.

A remarkable circumstance in this case is presented by the fact that the violent outbursts of temper and her conduct were never manifested in the presence of others. To the contrary, her conduct in the presence of third persons was beyond criticism, indicating that she had perfect control of herself when she wished, and that her treatment of libellant in the privacy of the home was a manifestation of dislike and inveterate hatred of her husband.

Quoting from the opinion of the lower court: "That the husband lived up to the highest standard of respect, affection and care demanded of him in the married state was testified to even by the wife. That the wife failed to observe the same standard was admitted by herself." ...... Personal observation of the libellant easily persuades the court that he is a man who possesses refinement and sensibilities and is of a high moral quality. The evidence would indicate that he unquestionably suffered acutely from the abuse and the cruelty heaped upon him by his wife, even though that treatment did not reach the baseness or the crudity which may be necessary to affect a person of less delicacy and of more primitive ruggedness. ......

The libellant has been subject for almost two decades to violent outbursts of temper on the part of his wife. He has had to submit to nagging, name calling and he had to be the recipient of angrily thrown over-

shoes, books and dirty dish-water, in addition to being beaten with the fists. While, of course, the physical blows were not of that severity to endanger the life of libellant, it cannot be doubted that the unrelenting conduct on the part of the wife towards him grievously wounded his mental feelings, disturbed his peace of mind and destroyed the legitimate ends and objects of matrimony."

In the case of *Breene v. Breene,* 76 Pa. Superior Ct. 568, Judge ORLADY speaking for this court, said at pp. 571, 572; "...... We ignore many extravagant expressions that were applied to each other; but *one outstanding fact* is clearly established, that during all their married life the husband was eager to secure and maintain a social, professional and business standing in his community in proportion to his energy and ability. His justification for separating from his wife and family is based upon facts indisputably proved, which establish a course of conduct on the part of the wife, persisted in through many years, which clearly evidenced her mental attitude towards her husband and made it impossible for him to further maintain the relation of husband to her. *It is idle to urge that the cruel treatments and indignities to the person, upon which a libellant must rely, are limited to the personal, physical assaults or offensive epithets directed to him as an individual. There are many decisions to answer such an argument."* Also at p. 573: "Assuming that each party has offended against the established proprieties that are expected in the marital relation, — even under such unfortunate conditions there must be some point, beyond which human indulgence cannot be expected to submit, and resort to the courts may rightly be had to sever a relation no longer endurable, and which makes a further living together intolerable and life burdensome. To hold that there can be no legal relief from

such a deplorable condition would likely result in such physical violence as would jeopardize the life of one of the parties. We are not called upon to balance such an account of mutual delinquencies, but only to determine which party is the least open to the charge of causing the situation." (Italics supplied).

One of the latest pronouncements of this court on the subject of conduct justifying a decree of divorce on the ground of indignities is to be found in the case of *Brown v. Brown,* 124 Pa. Superior Ct. 237, 189 A. 711. We quote as follows from the opinion of Judge PARKER in that case: "The husband was phlegmatic and the wife neurotic ...... She screamed and cried so as to prevent him from sleeping, and applied vile epithets to him. At other times she threw at him a glass of water, an oil can and a wooden box. If we accept the testimony of the husband, these actions were not occasional acts, but constituted a continuous course of conduct such as to render the husband's condition intolerable and life burdensome, and improper conduct on his part did not provoke her outbursts. ...... We are of the same opinion as the master and the court below in concluding that in the main evidence of the husband should be accepted, that the conduct of the wife consisted of 'unmerited reproach, habitual contumely, studied neglect, intentional incivility, manifest disdain, abusive language, and other plain manifestations of settled hate and estrangement.' This constituted a course of conduct and not having been provoked by the husband constituted indignities as that phrase is used in the Divorce Act. ...... The conduct of the wife, in preventing her husband from sleeping after hard days at labor and when he was compelled to seek rest at irregular hours, and her constant nagging must have had a serious effect upon him."

After a careful examination of all the testimony in

this case we concur in the conclusion reached by the court below.

The assignment of error is overruled and the decree is affirmed.