## Keefer v. Keefer

*Eugene R. Hartman,* for plaintiff.

SHEELY, P. J., April 5, 1958.—This action in divorce was brought on the grounds of indignities to the person and cruelty. The learned master who heard the case reports that plaintiff's testimony leaves a great deal to be desired especially with respect to the details of her husband's conduct of which she complains, and was of the opinion that the evidence is not sufficiently clear and convincing to make out the allegation of indignities to the person. We agree with this observation and with this conclusion.

The master found, however, that the charge of cruelty had been sustained and recommends a divorce on that ground. With this conclusion we do not agree. The master's recommendation was based on his finding that defendant threatened his wife on more than one occasion to put a bullet in her head; he threatened to

smash their car into a tree; he threatened to smash a drenching bottle over his wife's head; he told her she would have "a hard road to travel" and that she would have a "damn hard time"; he struck his wife on the leg with an iron fence post injuring her to such an extent that she had to receive medical attention, and on one occasion he tore off her sweater leaving marks on her. The difficulty is that the testimony does not support these findings of fact.

In Sharp v. Sharp, 106 Pa. Superior Ct. 33, 35 (1932), the court said: "Cruel and barbarous treatment . . . implies a merciless and savage disposition leading to conduct amounting to actual personal violence, or creating a reasonable apprehension thereof—such a course of treatment as renders further cohabitation dangerous to physical safety." In 2 Freedman, Marriage and Divorce (2d ed.), §296, p. 697, it is said: "Reason, therefore, dictates that the intent to do injury, the malicious or malevolent intention toward the spouse, must be present, in Pennsylvania, in order to constitute cruelty." This element is not present in this case.

There is no evidence that defendant ever threatened to put a bullet in his wife's head. What was said was that if she went away at night she could expect a bullet in her head when she came home and that if she left home she would regret it the rest of her days. The harshness of even this statement was later modified when she testified that: "That was just to scare me and if I ran around I could expect a bullet in my head." This was not a threat to injure his wife.

Defendant did not threaten to smash their car into a tree. The parties evidently had financial difficulties all the time they were married and two years before plaintiff left the home they went through bankruptcy. The bankruptcy hearing was held in Westminster and apparently there was some difficulty about putting in

a claim which angered defendant. Plaintiff testified that "on the way home he was swearing about putting in a claim and he got a notion, he said, to hit the damn tree." There was nothing in this statement to constitute a threat, and what was said did not involve plaintiff except that she was riding with him in the car at the time.

The incident concerning the drenching bottle arose when defendant was working in the cow stable and a cow belonging to plaintiff kicked him. Plaintiff did not testify what conversation took place but merely said: "He got mad and said he would take the drenching bottle and smash it in fine pieces over my head." This statement clearly indicates that there was an argument but, in any event, nothing happened.

According to plaintiff defendant did say that she would have a damn hard time and a hard road to travel, but the circumstances under which the statement was made indicated that there had been an argument. Apparently defendant was going away to butcher and plaintiff set the alarm clock but made a mistake and got up one hour too soon. She testified: "You should have heard him and how he carried on." Under these circumstances we could hardly consider defendant's statement as a threat of bodily harm to plaintiff.

The incident involving the iron fence post also falls short of indicating any intention on the part of defendant to harm plaintiff. While the parties were eating breakfast the cows broke out of the barnyard. Defendant "wanted to get to work and he had to fool around and fix the fence and that made him mad". On direct examination plaintiff testified that "he hit me on the leg with a fence post" but gave no other details of how he hit her or what was said. The master asked her whether defendant hit her deliberately and she answered: "He said I got in his way, but he didn't care whether he hit me or not." It is clear that the striking

was accidental and that there was no intention on the part of defendant to injure plaintiff.

Finally, the incident concerning the torn sweater falls short of showing cruelty on the part of defendant. Rather, it tends to show an argument in which plaintiff apparently took her own part. Her entire testimony on this point was: "We got up late one Sunday morning and I was pumping the water for the ducks and he came in and put a milk can in the milk trough and wouldn't wait until I got water for the ducks and he cursed and swore and tore my sweater and dress and carried on high, he couldn't wait until I had water for the ducks." It would seem that plaintiff was the one who became annoyed because defendant would not wait until she completed her chores.

The incidents complained of by plaintiff are not of the gravity required to make out a case of cruelty. The complaint must be dismissed.

And now, April 5, 1958, the complaint is dismissed at the cost of plaintiff. An exception to this order is noted on behalf of plaintiff.